**Douglas CAREY, Petitioner**

v.

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 2, 2012.

Decided Jan. 24, 2013.

Douglas Carey, pro se.

Travis S. Anderson, Assistant Counsel, Mechanicsburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge SIMPSON.

Douglas Carey (Requester) appeals from the Office of Open Records' (OOR) final determination that denied his appeal from the Pennsylvania Department of Corrections (DOC) denial of his request under the Right–to–Know Law (RTKL),[1] seeking records related to the mass inmate transfer to Michigan. Requester was one of the

approximately 1,000 inmates subject to the transfer.

DOC asserted insufficient specificity and a number of substantive exceptions. Requester argues the OOR erred in finding records exempt from disclosure under Section 708(b)(2) of the RTKL, 65 P.S. § 67.708(b)(2), the "Public Safety" exception. Requester contends the OOR erred in not requiring DOC to disclose public records and certain documents with appropriate redaction. We affirm the OOR as to specificity, and reserve the remainder of our decision so DOC may supplement the record as to the security-related exceptions.

## I. Background

On May 10, 2012, Requester submitted a request related to the Transfer of inmates from Pennsylvania state correctional institutions to a correctional facility in Michigan (Transfer),[2] from 2008 to date. Specifically, Requester sought:

1. All communications and statements made by [DOC], or to [DOC] regarding said transfers. [sic] Including emails, texts, phone messages, fax, etc.

2. All documents/communications which may indicate the individual[s] or agencies who authorized said transfers.

3. All documents/communications of [DOC] including but not limited to, SCI–Albion, the Secretary of Corrections, the Governor of the State of Pennsylvania, the Michigan Department of Corrections and any other governmental official regard-

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. In early 2010, due to overcrowded prisons, DOC transferred approximately 1,000 inmates from Pennsylvania to Michigan's Muskegon prison, thus delaying its planned closure. The Pennsylvania inmates returned from Michigan in Spring 2011, earlier than the agreement between the states anticipated.

ing the transfer of Pennsylvania inmates to the State of Michigan.

4. All documents which released inmate Douglas Ralph Carey [Requester] (GF–6829) from [DOC] and which recommitted inmate Carey to the State of Michigan Department of Corrections.

5. All documents which were provided to the inmates who were transferred prior to, during, and after said transfers.

Certified Record (C.R.) at Ex. 1 (Request).

DOC denied the Request in its entirety, asserting insufficient specificity pursuant to Section 703 of the RTKL, 65 P.S. § 67.703. DOC also denied the request substantively, asserting the following exceptions: Personal Security exception, 65 P.S. § 67.708(b)(1)(ii); Public Safety exception, 65 P.S. § 67.708(b)(2); Medical Records exception, 65 P.S. § 67.708(b)(5); Predecisional Deliberative exception, 65 P.S. § 67.708(b)(10); Criminal Investigative exception, 65 P.S. § 67.708(b)(16); Noncriminal Investigative exception, 65 P.S. § 67.708(b)(17); Social Services exception, 65 P.S. § 67.708(b)(28); and, deliberative process privilege. C.R. at Ex. 2.

The OOR found the Request sufficiently specific, but denied access to the records pursuant to the Public Safety exception. The OOR applied a two-part test: (1) the record must be maintained by the agency in connection with its law enforcement or other public safety activity; and, (2) the release of the record must be "reasonably likely" to threaten public safety. In support, the OOR cited its own decisions in *Walker v. Macungie Police Department,*

OOR Dkt. AP 2009–0509 and *Laigle v. City of Wilkes–Barre,* OOR Dkt. AP 2010–0267. The OOR held DOC met the first element.

As to whether the disclosure would threaten public safety, the OOR considered the affidavit submitted by DOC. That affidavit attested that the responsive records would reveal the names of DOC officials responsible for transfers, and reveal security and logistical procedures to transfer custody of inmates. These revelations would allow interference with DOC security measures and thus threaten DOC, inmate and general public safety. The OOR characterized the attestation as a "professional opinion," and it held DOC met the second part of the Public Safety exception test.

▉ Requester filed a petition for review with this Court.[3] Requester asserts he did not seek records that qualify for exemption from disclosure given this Court's precedent in *Pennsylvania State Troopers Association v. Scolforo,* 18 A.3d 435 (Pa.Cmwlth.2011), which provides that any perceived threat is removed by redacting the records. Requester contends DOC has "a system in place which rates documents as 'public' or 'not public'" at the time of creation. *See* Pet. for Review at ¶ 14. Requester also asserts he has no duty to refute grounds DOC asserted as merely possible exemptions, leaving specificity as the only proper defense.

## II. Discussion

Under the RTKL, records in the possession of an agency are presumed to be public unless they are: (1) exempted by

---

**3.** In reviewing a final determination of the OOR involving a Commonwealth agency, this Court "independently reviews the OOR's orders and may substitute its own findings of facts for [those] of the agency." *Bowling v. Office of Open Records,* 990 A.2d 813, 818 (Pa.Cmwlth.2010), *appeal granted in part,* 609 Pa. 265, 15 A.3d 427 (2011). We are not limited to the rationale offered in the OOR's decision, and we may take additional evidence in order to ensure a record sufficient for adequate appellate review. *Id.*

Section 708 of the RTKL; (2) protected by privilege; or (3) exempted "under any other Federal or state law or regulation or judicial order or decree." Section 305 of the RTKL, 65 P.S. § 67.305. The Commonwealth agency bears the burden of proving a record is exempt from disclosure. *Dep't of Transp. v. Office of Open Records (Aris)*, 7 A.3d 329 (Pa.Cmwlth.2010).

We address the merit of the defenses DOC raised: (1) insufficient specificity; and (2) substantive exceptions.

## A. Insufficient Specificity

First, we consider the sufficiency of the Request. Section 703 provides:

> A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested. . . .

65 P.S. § 67.703. From our review of the five-part Request, we agree with the OOR that the Request satisfies the criteria in Section 703.

All of the records are specified by subject matter and date. Thus, all records pertain to transfers to or from Pennsylvania correctional institutions and to or from Michigan correctional institutions from 2008 to the date of the Request, May 2012.

DOC primarily focuses its lack of specificity argument on the burden placed on DOC in responding to the Request. DOC explains it maintains records related to "[t]ransfer [ . . . ] scattered across the Commonwealth in the files of dozens or perhaps hundreds of [DOC] employees at 24 correctional institutions, as well as in the institutional files of approximately 1,000 inmates." *See* C.R., Ex. 5, DOC Submission to OOR dated 6/14/12 at 2.

■ As we recently held in *Department of Environmental Protection v. Legere/Times–Tribune*, 50 A.3d 260 (Pa. Cmwlth.2012), a burden on an agency attendant to gathering responsive records does not pertain to sufficiency of a request or render it non-specific. *Id.* at 265 ("an agency's failure to maintain the files in a way necessary to meet its obligations under the RTKL should not be held against the requestor. To so hold would permit an agency to avoid its obligations under the RTKL simply by failing to orderly maintain its records.").

■ Part 1 of the Request seeks all communications by DOC to others regarding the transfers of inmates from Pennsylvania to Michigan, and the reverse, over a finite period of time. Part 1 describes the specific types of communications sought, "including emails, texts, phone messages, fax[es]." *See* Request. Part 3 seeks all records and communications of government individuals or entities regarding the transfer of Pennsylvania inmates to Michigan generally. Part 4 seeks information related to Requester's transfer and recommitment. Part 5 seeks all records that were provided to the transferred inmates, before, during, and after their transfer. Each of these parts specifies a subject matter, a finite timeframe and seeks a discrete group of documents, either by type, as communications, or by recipient, as in records provided to inmates in Part 5. The Request is sufficiently specific to enable DOC to assess which records are sought.

The only part of the Request where specificity is less clear is Part 2, in which Requester seeks "all documents/communications which may indicate" the identities of those who authorized the transfers. The word "may" renders that part of the Request vague; nevertheless, the specific subject matter and timeframe, coupled with the fact that the Transfer is well-known to DOC, suffice to apprise DOC of the records sought. Thus, we affirm

OOR's determination as to specificity of the Request.

## B. Substantive Exceptions

 DOC asserted a number of substantive exceptions, including the Personal Security exception, the Public Safety exception, the Noncriminal Investigative exception, and the Predecisional Deliberative exception. DOC also asserted the deliberative process privilege. The RTKL is remedial legislation; therefore, the exceptions from disclosure must be narrowly construed. *Governor's Office of Admin. v. Purcell,* 35 A.3d 811 (Pa.Cmwlth.2011); *Bowling v. Office of Open Records,* 990 A.2d 813 (Pa.Cmwlth.2010) (*en banc*), *appeal granted in part,* 609 Pa. 265, 15 A.3d 427 (2011). DOC bears the burden of proving its exceptions.[4] 65 P.S. § 67.708(a).

 As a preliminary matter, we address Requester's claim that DOC did not properly preserve any grounds other than insufficient specificity. Section 903(2) of the RTKL requires an agency to set forth "specific reasons for the denial, including a citation of supporting legal authority." 65 P.S. § 67.903(2). After raising insufficient specificity, DOC asserted a number of exemptions stating "many of the possible records may be exempt for the following reasons," and cited an appropriate section of the RTKL or other legal authority. C.R., Ex. 2 at 1, 3.

DOC's denial does not differentiate among the many potentially responsive records, and it does not adequately explain the failure to redact protected material from potentially responsive records. However, the denial specifies exemptions and cites supporting legal authority. Thus, while the denial is deficient in its descrip-

tion of the types of records to which each asserted exemption applies, the denial is sufficient to put Requester on notice of the exemptions at issue. Notice is the essential purpose of the denial. *Signature Info. Solutions, LLC v. Aston Twp.,* 995 A.2d 510 (Pa.Cmwlth.2010) (purpose of asserting grounds for denial to provide notice to requester for appeal grounds); *see also Saunders v. Dep't of Corr.,* 48 A.3d 540 (Pa.Cmwlth.2012) (upholding sufficiency of DOC denial as DOC elaborated as to how exemption applied to records at issue). We consider the deficiencies Requester describes in light of the sufficiency of the proof submitted, not sufficiency of the assertion. Determining that the assertion of denial grounds is sufficient, we now turn to the exemptions.

### 1. *Personal Security*

The Personal Security exception protects any record, the disclosure of which "would be reasonably likely to result in substantial and demonstrable risk of physical harm to or the personal security of an individual." Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii). DOC's proof focused upon the identities of individuals responsible for taking actions sought in Part 2 of the Request. We note that none of the other parts of the Request seek identities of individuals.

 To establish this exception, an agency must show: (1) a "reasonable likelihood" of (2) "substantial and demonstrable risk" to an individual's security if the information sought is not protected. *Purcell.* We defined substantial and demonstrable as actual or real and apparent. *Id.* "More than mere conjecture is needed." *Id.* at

---

4. DOC submitted no proof to substantiate the Criminal Investigative, Medical Records or Social Services exceptions, and it did not

brief these exceptions on appeal. Therefore, we do not address them here. We consider any arguments with respect to them waived.

820 (citing *Lutz v. City of Phila.*, 6 A.3d 669, 676 (Pa.Cmwlth.2010)).

Personal security issues are of particular concern in a prison setting. *Dep't of Corr. v. Gardner*, (Pa.Cmwlth., No. 631 C.D. 2011, filed April 27, 2012) (unreported) (quoting *Commonwealth v. Dugger*, 506 Pa. 537, 542, 486 A.2d 382, 384 (1985) that "[a] prison setting involves unique concerns and security risks" and upholding Personal Security exception as to training materials of identified DOC employee). Given the heightened risk associated with prisons, representations regarding perceived threats to individual DOC personnel posed by inmates are persuasive.

■ In Part 2 of the Request, Requester seeks the identities of "the individuals or agencies who authorized" the transfers. With regard to this part of the Request, DOC met its burden of proof. In its affidavit, DOC specifically addressed records that reflect the names of staff who approved or authorized the transfers. DOC explains that many inmates, including Requester, did not want to be transferred. DOC further explained inmates may retaliate against DOC officials who nominated inmates for or authorized transfers. Disclosure of the identities of DOC officials, similar to disclosure of first names of corrections officers, poses a substantial and demonstrable risk to personal security under these circumstances. *Stein v. Office of Open Records*, (Pa.Cmwlth., No. 1236 C.D. 2009, filed May 19, 2010) (unreported) (corrections officers' first names protected for personal security reasons).

We note that since Part 2 seeks the records revealing the individuals or agencies who authorized the transfers, removing the identities of any individuals who authorized transfers nullifies that part of the Request. Essentially, redacted records cannot satisfy the Request. Were DOC to redact the identities of those who authorized the transfers from responsive records, there would not be any information "indicating [...] who authorized said transfers" to provide in response. Therefore, we hold the records sought in Part 2 are protected entirely by the Personal Security exception.

### 2. Public Safety

The Public Safety exception of the RTKL, 65 P.S. § 67.708(b)(2), was the sole exception the OOR addressed in its final determination. Section 708(b)(2) of the RTKL protects:

A record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity or a record that is designated classified by an appropriate Federal or State military authority.

65 P.S. § 67.708(b)(2).

■ DOC bears the burden of proving by a preponderance of the evidence that the disclosure of the records "would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity...." 65 P.S. § 67.708(b)(2); *Adams v. Pennsylvania State Police*, 51 A.3d 322 (Pa.Cmwlth. 2012). A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to "a more likely than not" inquiry. *Delaware Cnty. v. Schaefer ex rel. Phila. Inquirer*, 45 A.3d 1149, 1156 (Pa.Cmwlth.2012) (en banc).

■ To establish this exception, an agency must show: (1) the record at issue relates to a law enforcement or public safety activity; and, (2) disclosure of the record would be "reasonably likely" to threaten public safety or a public protec-

tion activity. *Adams*. In interpreting the "reasonably likely" part of the test, as with all the security-related exceptions, we look to the likelihood that disclosure would cause the alleged harm, requiring more than speculation. *Purcell; Lutz*.

To support this exception, DOC submitted a declaration of Joanne Torma, Director of the Office of Population Management, made pursuant to 18 Pa.C.S. § 4904 (Torma Affidavit). She advised she was involved in the "Transfer" of Pennsylvania inmates to Michigan and is familiar with related responsive records. She stated "in my professional opinion, the requested records should not be released to the public for the following reasons." C.R., Ex. 5, Torma Affidavit at ¶ 4. She attested:

> The Transfer was the work of dozens or perhaps hundreds of [DOC] employees at 24 correctional institutions, as well as [DOC's] Central Office, and generated a tremendous amount of paperwork. Documents pertaining to the transfer [sic] are in the possession of each of these employees, and are also found in the institutional files of each of the approximately 1,000 inmates who were transferred.

*Id.* at ¶ 7. She further attested that to assess eligibility for transfer, DOC screened thousands of inmates to ensure they met religious, medical, psychiatric, behavioral and other criteria. Torma cautioned disclosing responsive records would foster retaliation against DOC and jeopardize the security of future transfers, and allow inmates to manipulate the eligibility assessment for transfer. *Id.* at ¶¶ 16–17.

We addressed the Public Safety exception in a handful of cases that guide our analysis here.

In *Bowling*, a requester sought information regarding purchases and locations of items purchased by the Pennsylvania Emergency Management Agency (PEMA).

As a law enforcement agency, PEMA redacted the recipients and their locations, without regard to whether the item revealed anything about public safety. We concluded that information revealing the location/recipients of certain items PEMA purchased (such as bungee cords) could not "endanger[ ] the public safety or preparedness." *Bowling*, 990 A.2d at 825. The Court, however, reasoned that "knowledge of the location of some goods and services may pose a threat to the public safety." *Id.* Ultimately, we remanded to the OOR to remand to PEMA for additional information tying the redactions to public safety, and requiring disclosure as to items that were not "reasonably likely to endanger public safety." *Id.*

In *Woods v. Office of Open Records,* 998 A.2d 665 (Pa.Cmwlth.2010), this Court affirmed the OOR determination holding the "Supervision Strategies" part of a sex offender supervision manual exempt under the Public Safety exception. The essential factor in our decision in *Woods* was the detail which the director of the Board of Probation and Parole provided regarding the substance of the records, and the ways in which a sex offender might use the information to evade or avoid detection.

We likewise relied upon an affidavit in *Adams* to hold that the training materials on the use of confidential informants are protected by this exception. We reasoned that disclosing the information contained within the training materials put the officers and the public at risk because it would undermine investigations and prevent informants from coming forward. Significantly, the officer who submitted the affidavit had over 20 years of experience in the field, and he made his sworn statement based upon his experience. In relying on the affidavit, we explained that since the affidavit was the result of extensive experi-

ence, it amounted to more· than speculation.

Similarly, in this case, we must consider whether the Torma Affidavit: (1) includes detailed information describing the nature of the records sought; (2) connects the nature of the various records to the reasonable likelihood that disclosing them would threaten public safety in the manner described; such that, (3) disclosure would impair DOC's ability to perform its public safety functions as to inmate transfers, the alleged threatening consequence.

■ This Court consistently holds that speculation and conclusory statements in an affidavit do not show a reasonable likelihood of a threat to security. *Lutz.* An affidavit that does nothing more than state that, based on the affiant's professional experience, the disclosure of the information "would create a substantial risk of physical harm" [5] for the agency and the public is insufficient. We rejected such language in *Harrisburg Area Community College (HACC) v. Office of Open Records,* (Pa.Cmwlth., No. 2110 C.D.2009, filed May 17, 2011) (unreported).

■ In *HACC,* the requester, an attorney who represented clients charged with driving under the influence (DUI), sought training curricula used to teach police officers about making and securing DUI arrests. HACC submitted an affidavit in which its affiant stated "[b]ased upon my professional experience and judgment [as director of Municipal Police Officer Education and Training Commission], a disclosure of the Commission's DUI curriculum in response to this RTKL request would be reasonably likely to jeopardize or threaten the Commission's statutorily-mandated public protection activity." *Id.,* slip op. at 14. This Court found the affidavit insufficient because it failed to connect

the disclosure of the DUI training materials to any impairment of a public safety activity. Torma's Affidavit is similarly conclusory and insufficient to substantiate the Public Safety exception here.

Further, on the record before us, it is unclear whether Torma offers a "professional law enforcement opinion" like that offered by the affiant which we found compelling in *Woods.* The record does not include any information regarding her experience or length of time in a law enforcement role, or explain what her role as Director of the Office of Population Management entails.

■ Unlike other cases in which the courts uphold invocations of the Public Safety exception, the records here do not involve training materials used by law enforcement. Requester does not seek all records related to inmate transfers. Thus, Requester does not seek eligibility criteria or policies regarding transfer. He does not seek strategies or information that would divulge DOC's public protection activities. He advises in his brief that such documents are not comprised within his Request, and he does not appeal the withholding of such documents. Requester seeks records related to the "Transfer" of a large number of inmates from Pennsylvania to Michigan at a significant cost per inmate paid to another jurisdiction.

Certain Transfer-related records, such as those regarding the logistics of a safe mass transfer, clearly implicate public safety. However, records of communications between government officials regarding the Transfer may contain a financial component severable from public safety concerns, pertaining to the soundness of the decision to send over a thousand inmates out of state to be housed. That

---

5. *See* Certified Record (C.R.), Ex. 5, Torma Affidavit at ¶ 14.

DOC failed to describe the responsive records in sufficient detail to enable this Court to analyze the exceptions as to these records is a flaw in its proof necessitating correction.

Adequate description of responsive records is crucial to demonstrate how disclosure threatens public safety. Our close assessment of the Torma Affidavit reveals that DOC did not explain which records are protected and which are not.

The Request consists of five parts, four of which require further review and analysis. Without differentiating among responsive records, DOC assumes that "confidential documents detailing the security and logistical procedures employed by [DOC] in organizing the mass transportation of more than 1,000 inmates across multiple states" are subject to the Request. Torma Affidavit at ¶ 12.

Although such confidential records could potentially be encompassed within the communications of the government parties in Parts 1 and 3 of the Request, DOC did not state that such confidential records are responsive to the Request. Instead, DOC claimed only that such records fall within a "request for *all records* related to the [T]ransfer." *Id.* (emphasis added). Despite DOC's description, the Request does not seek "all records." In neglecting to represent that the records are in fact responsive to one of the parts of the Request, and which part, DOC's proof cannot suffice.

DOC also did not connect responsive records with a threat to public safety. Nor did DOC explain how the disclosure of communications is reasonably likely to impair transfers. DOC may be able to redact responsive records and thus render them non-threatening to public safety. *See Scolforo.* Yet, DOC did not disclose any records in redacted form, and it offered no reason for its failure to do so.

As to Parts 4 and 5 of the Request, we fail to see how records already disclosed to inmates regarding their transfers implicate public safety. As to Parts 1 and 3 of the Request, we are not armed with sufficient information on the existing record to discern how this exception applies to the expanse of responsive records.

 When security-related exceptions are asserted in the police or prison context, *and* responsive records implicate valid security concerns, *and* an agency's proof is insufficient to discern the contents of responsive records, seeking additional evidence may be appropriate. *Dep't of Envtl. Prot. v. Cole,* 52 A.3d 541, 551 (Pa.Cmwlth. 2012) (regarding additional evidence generally); *Schaefer* (remanding to trial court to assess personal security exception); *Dep't of Admin. Servs./ASCI v. WTAE–TV,* 13 A.3d 1025 (Pa.Cmwlth.2011) (*en banc* ) (same); *see generally Bowling.*

Here, the circumstances present a uniquely suitable case for supplementation. This is because DOC did not describe the responsive records or connect the security threat to them, and the records relate to prison operations, heightening the risk associated with disclosure. Without more information, we would be remiss in deciding this case on the current record.

Given the prison setting and attendant inherent risks presented by disclosure of records documenting prison operations, *Dugger,* we exercise our discretion to accept additional evidence. Accordingly, we direct DOC to supplement its affidavit regarding how the security-related exceptions apply to Parts 1 and 3 of the Request within 60 days. This Court retains jurisdiction to expeditiously review the evidence ourselves to prevent further delay. *See Bowling* (court reviewing an appeal from the OOR under the RTKL should consider the manner of proceeding most

consistent with justice, fairness and expeditious resolution).

### 3. Noncriminal Investigative Exception

■ DOC also argues the Noncriminal Investigative exception in Section 708(b)(17) of the RTKL applies. The Noncriminal Investigative exception protects agency records "relating to a noncriminal investigation." 65 P.S. § 67.708(b)(17). Torma attested that DOC "conducted a thorough investigation into the eligibility and suitability of each inmate who was transferred, as well as many more inmates who were ultimately deemed ineligible for transfer." *See* Torma Affidavit at ¶ 18.

Again, DOC did not explain how or where such investigations fall within the realm of responsive records. Requester does not seek eligibility related records, and therefore records related to religious practices and medical status of inmates are not implicated in disclosure. Further, these types of reviews conducted to make a decision are not "investigations" as this Court has defined them. *See Dep't of Health v. Office of Open Records*, 4 A.3d 803 (Pa.Cmwlth.2010) (agency must show "a systematic searching or probe" was conducted of a noncriminal matter). Therefore, we discern no merit in this exception.

### 4. Predecisional Deliberative Exception/Privilege[6]

With regard to the Predecisional Deliberative exception, Torma stated:

The documents or records related to [DOC's] plans leading up to the Transfer contain internal, pre-decisional deliberations between [DOC] officials and employees. They contain opinions, advice and mental impressions of [DOC] staff

members with regard to a proposed Departmental action.

Participants in the deliberations associated with [DOC's] plans for the Transfer understood that records of their deliberations would be kept confidential and not shared with anyone outside [DOC]. Knowledge of this confidentiality insures [sic] that the participants may engage in deliberations in a free and open manner, which is critically important to the effectiveness of deliberations.

Torma Affidavit at ¶¶ 22–24. She advises disclosure would chill candid discussions.

■ Section 708(b)(10)(i)(A) exempts from disclosure a record that reflects:

(A) The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. § 67.708(b)(10)(i)(A). "According to the language of Section 708(b)(10)(i)[A], protected records must be predecisional and deliberative." *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1214 (Pa.Cmwlth. 2011). Only information that constitutes "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice" is protected as "deliberative." *In re Interbranch Comm'n on Juvenile Justice*, 605 Pa. 224, 238, 988 A.2d 1269, 1277–78 (2010) (quoting plurali-

---

**6.** As the Predecisional Deliberative exception codifies the privilege, the requisite elements of proof are identical, and case law interpret-

ing the deliberative process privilege applies. Thus, we need not perform a separate analysis of the privilege.

ty opinion in *Commonwealth v. Vartan,* 557 Pa. 390, 399, 733 A.2d 1258, 1263 (1999)). The records must also be "internal" to a governmental agency. *Kaplin* (explaining internal requirement is met when records are internal among governmental agencies).

■ To establish this exception, DOC must show: (1) the information is internal to the agency; (2) the information is deliberative in character; and, (3) the information is prior to a related decision, and thus "predecisional." These are the same three elements applied to the deliberative process privilege. *Vartan.*

■ To qualify for exemption under the Predecisional Deliberative exception, an agency must explain how the information withheld reflects or shows the deliberative process in which an agency engages during its decision-making. First, agencies must show the communication occurred prior to a deliberative decision. *See Joe v. Prison Health Servs., Inc.,* 782 A.2d 24, 33 (Pa.Cmwlth.2001) (regarding deliberative process privilege). Second, agencies must submit evidence of specific facts showing how the information relates to deliberation of a particular decision. *Id.* Agencies may meet this burden by submitting an affidavit that sets forth sufficient facts enabling a fact-finder to draw its own conclusions. *Id.*

■ As with its assertion of the other exceptions, DOC does not differentiate among the distinct parts of the Request. DOC instead focuses upon how eligibility assessment records are protected, and if disclosed, how the release would impair candor of DOC officials. The Request, however, does not seek "eligibility assessment" records, nor does it purport to seek access to every inmate file DOC reviewed in deciding who to transfer.

Part 1 of the Request seeks "statements" and communications to or from DOC, from or to others. Thus, internal records are not sought. Lacking one of the requisite elements, records responsive to Part 1 are not protected by this exception.

Part 2 of the Request is exempt on security grounds, as discussed above.

Part 3 of the Request seeks communications of DOC and Michigan's DOC and government officials regarding the Transfer. It is conceivable that communications between DOC officials would implicate this exception, as they would at least meet the "internal" element.

Part 4 of the Request is specific to Requester, who as an inmate had a document of release and recommitment as a participant in the Transfer. DOC does not substantiate, or even explain how a record of release and recommitment constitutes an internal deliberative document. Therefore, this exception does not shield records responsive to Part 4.

Part 5 of the Request seeks "all documents which were provided to the inmates who were transferred." Again, the records sought, on their face, are not internal to DOC as they are "provided" to inmates who participated in the Transfer.

Summarizing the foregoing, the only part of the Request to which the Predecisional Deliberative exception may arguably apply is Part 3. Parts 1, 4 and 5 are not internal to the agency, and so fail to meet the test.

As to Part 3, we evaluate the other two elements of the test: a communication prior to a decision, and the content of the communication being deliberative in nature. DOC does not establish these elements. Other than the eligibility assessments (which Requester states he does not seek), DOC does not identify a "decision."

Presuming DOC intends the exception to apply to deliberations regarding whether to proceed with the overall Transfer, DOC did not submit sufficient proof to show that all the communications with any other government officials are "deliberative" than factual in nature. *Vartan.*

Moreover, certain records that post-date the decision to make the Transfer, after completion of the deliberative process, would not be protected. For example, the authorization to transport inmates out of state would not be protected by this exception. Similarly, documents and communications authorizing the Transfer, including any contracts, would not be protected. Yet, DOC did not provide a single record in response to the Request.

DOC failed to establish that all communications, including emails, texts, phone messages, and faxes, are deliberative or pre-date an operative decision. Agencies must identify an operative decision. Also, as with all RTKL exceptions, agencies must show the connection between the information and the grounds for protection. Because DOC did not establish the Predecisional Deliberative exception, DOC cannot withhold responsive records on this basis.

### III. Conclusion and Directive

For the foregoing reasons, we affirm the OOR final determination in part as to specificity. However, concluding the record is inadequate, we hold in abeyance our decision as to which records must be disclosed pending receipt of additional evidence from DOC as to the security-related exceptions.

DOC's submission, due within sixty (60) days, shall become part of the record in this case and may form the basis of our decision regarding disclosure.

### ORDER

**AND NOW,** this 24th day of January, 2013, the final determination of the Office of Open Records is **AFFIRMED IN PART** as to specificity, and **HELD IN ABEYANCE IN PART** pending receipt of additional information.

With regard to the substantive exceptions, we discern no merit in the assertion of the Noncriminal Investigative exception or Predecisional Deliberative exception. However, with regard to the security-related exceptions only, within sixty (60) days of the date of this Order, the Department of Corrections is directed to supplement its affidavit in accordance with the foregoing opinion.

Jurisdiction retained.