**[J-72-2019] [MO: Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA, | : | No. 66 MAP 2018 |
| | : | |
| | : | Appeal from the Order of the |
| Appellant | : | Commonwealth Court at No. 1066 |
| | : | CD 2017 dated May 18, 2018 |
| | : | Reversing the Order of the Office of |
| v. | : | Open Records at No. AP 2017-0593 |
| | : | dated July 7, 2017. |
| | : | |
| PENNSYLVANIA STATE POLICE, | : | ARGUED: November 19, 2019 |
| | : | |
| Appellee | : | |

**DISSENTING OPINION**

**JUSTICE MUNDY**                                          **DECIDED: June 16, 2020**

The Right to Know Law (RTKL) imposes the lowest evidentiary burden on parties seeking to apply one of the narrow exceptions to disclosure—a preponderance of the evidence standard. 65 P.S. § 67.708(a)(1). In determining the Commonwealth Court should have reviewed the unredacted policy, the Majority implies the evidence submitted by the Pennsylvania State Police (PSP), i.e., the Burig Affidavit, was not sufficient to satisfy its burden of proof. In reaching this conclusion, the Majority seemingly ignores the PSP's specific proffered evidence, in favor of unnecessarily expanding the reviewing court's scope of review. Therefore, I respectfully dissent.

The RTKL "is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." 65 P.S. § 67.101. Our General Assembly has carved out multiple exceptions regarding what constitutes a public record in order to accomplish

several important purposes, such as aiding the efficient administration of government, safeguarding the privacy of government employees, and protecting the safety and welfare of the Commonwealth. *See, e.g.*, 65 P.S. § 67.708 (b)(2), (5), and (10). Section 67.708(b)(2), the applicable exception in this case, exempts certain documents maintained by agencies such as the PSP that, if disclosed, "would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity." 65 P.S. § 67.708(b)(2). Agencies are charged with proving the application of the public safety exception, as well as any other exception, by a preponderance of the evidence. 65 P.S. § 67.708(a)(1).

The evidence that must be proffered to meet the preponderance standard "is such evidence as would lead a fact-finder to find that the existence of a contested fact is more probable than the nonexistence of the contested fact." *Office of the Dist. Attorney of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017). It is one of the lowest evidentiary standards, and "tantamount to a more likely than not inquiry." *Del. County v. Schaefer ex rel. Phila. Inquirer*, 45 A.3d 1149 (Pa. Cmwlth. 2012).[1] This means, in the context of the current invocation of the public safety exception, the PSP is charged with proving that it is more likely than not the policy's disclosure would be reasonably likely to jeopardize public safety or preparedness.

This is the test the Commonwealth Court set forth in *Carey v. Pa. Dep't of Corr.*, 61 A.3d 367 (Pa. Cmwlth. 2013). To be clear, by articulating this standard, the *Carey* Court did not offer a novel rule of law. Rather, the court merely synthesized the statutory

---

[1] As the Majority points out, this Court has yet to define the preponderance of the evidence standard under the RTKL. Majority Op. at 4. Despite the lack of a specific definition, we can import general tenets of law to inform our inquiry. *See, e.g., Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) ("A preponderance of the evidence is 'a more likely than not inquiry,' supported by the greater weight of the evidence; something a reasonable person would accept as sufficient to support a decision.").

requirement assigned to an agency attempting to prove certain documents warrant concealment under the RTKL.  Similarly, the *Carey* Court explained the persuasive value of an affidavit and how a reviewing tribunal may consider such evidence.  *Carey*, 61 A.3d at 376 ("We must consider whether [an affidavit]: (1) includes detailed information describing the nature of records sought; (2) connects the nature of the various records to the reasonable likelihood that disclosing them would threaten public safety in the manner described; such that (3) disclosure would impair [the agency's] ability to perform its public safety functions as to . . . the alleged threatening consequence.").  Again, the Commonwealth Court provides helpful instruction, but offers no new jurisprudence.

When examining the Burig Affidavit in light of *Carey*, Major Burig sufficiently explains why disclosure of the PSP's policy is reasonably likely to jeopardize public safety.  The AR 6-9 policy contains information establishing "procedures for [the] PSP when they use open sources for valid law enforcement purposes."  Burig Affidavit, 4/21/17, at 2.  Major Burig then provides a sufficient nexus between each redacted policy section and the ensuing harm.  As it pertains to Section 9.03, Utilization of Real-Time Open Sources as an Investigative Tool, he writes this section's disclosure would "leave Troopers at a disadvantage when investigating criminal activity, [and would] provide criminals with a tactical advantage because they would know exactly when [the] PSP can monitor their criminal activities through the use of open sources[,] thereby effectively concealing their criminal activities from discovery."  *Id*.  In regards to Section 9.04, Authorization to Access Real-Time Open Sources and/or Real-Time Open Source Networks, Major Burig writes, "[e]xposing this investigative method through the release of this administrative regulation would allow those involved in criminal activity to employ countermeasures to mitigate the effectiveness of this technique and impede investigations."  *Id*.  Major Burig offers an explanation equally as illuminating in regards

to the remaining five redacted sections. *Id.* at 3 ("Public availability of [Section 9.05 (Authorization Procedure for the use of Online Aliases)] will jeopardize the ability of PSP Troopers to conduct these types of investigation[s]. . . by providing the criminals with the tactics [the] PSP uses when conducting undercover investigations"; "Public access to [Section 9.06 (Deconfliction), Section 9.07 (Utilizing Real-Time Open-Source Monitoring Tools), or Section 9.08 (Source Reliability of Content)] will reveal how [the] PSP conducts its investigations using open sources, and therefore, would jeopardize [the] PSP's ability to conduct similar investigations in the future by revealing the investigative steps [the] PSP would take during a similar investigation"; "Public disclosure of [Section 9.10 (Utilization of Real-Time Open Sources for Employment Background Investigations)] will reveal what specific information may be reviewed when determining whether a candidate is suitable for employment as a civilian or a Trooper.").

Based on the information offered in the Burig Affidavit, the Commonwealth Court properly concluded the Office of Open Records erred in determining the PSP had not satisfied its burden. Major Burig's Affidavit goes beyond the mere "tick[ing] off [of] *Carey*'s three boxes." *See* Majority Op. at 19. Rather, it links specific sections of the policy to the resulting harm that is likely to threaten the PSP's protection activities. *See Fennell v. Pa. Dep't of Corr.*, 1827 C.D. 2015, 2016 WL 1221838, at *2 (Pa. Cmwlth. Mar. 29, 2016) ("Generally, whether an agency establishes this exception is based on the level of detail in the supporting affidavit."). Major Burig's Affidavit explicates the PSP's methods and protocols, and provides a tailored justification as to why the referenced information is essential to the agency's ability to ensure public safety, as referred to by the Majority. *See* Majority Op. at 19 ("There can be no question that law enforcement agencies require the ability to protect documents that would reveal methods, protocols, identities, and other information the secrecy of which is essential to the agencies' ability to ensure public

safety."). By offering this degree of specificity, surely Major Burig's averments warrant the "degree of deference to law enforcement agencies' opinions regarding how disclosure of a given document might have such an effect." *Id.*

The specificity found in the Burig Affidavit resembles the level found in *Woods v. Office of Open Records*, 998 A.2d 665 (Pa. Cmwlth. 2010), where the affiant described in detail the resulting harm that would ensue following the disclosure of records regarding supervision strategies of sex offenders. *Woods*, 998 A.2d at 667 ("Sex offenders who have knowledge of the scope and limits of the aforementioned procedures and practices would be reasonably likely to perform illicit activity, or similarly exploit the limitations of the parole agent's review"; "[D]issemination of the redacted information would reveal the capabilities and the scope of the Board's sex offender management procedures and policies."). By contrast, the affiant in *Harrisburg Area Community College (HACC) v. Office of Open Records*, 2110 C.D. 2009, 2011 WL 10858088 (Pa. Cmwlth. May 17, 2011), simply stated, "[b]ased upon my professional experience and judgment, a disclosure [of the requested documents] in response to this RTKL would be reasonably likely to jeopardize or threaten the [agency's] statutorily-mandated public protection activity." *HACC*, at *14. As both parties note, the Commonwealth Court found the public safety exception to apply in *Woods*; it did not in *HACC*.

Rather than address the sufficiency of the Burig Affidavit, the Majority instead focuses on the reviewing tribunal's scope of review. In my opinion, the review of a challenged document is not necessary where, as here, it is clear the presented evidence satisfies an agency's burden of proof. The Majority reasons, "[w]here a court declines to review a challenged document *in camera* based upon a supposition that an agency affiant has accurately assessed the likely effect of a given disclosure simply because there is no facial evidence of bad faith—especially where [the Office of Open Records] has

conducted such a review and found the affiant wanting under the governing standard—it simply cannot be said that the court exercised sound discretion." Majority Op. at 27. However, by the Majority's own admission, "[i]n the more common trial court-appellate court setting, an appellate court is not bound to review every piece of evidence that the trial court received or cited." *Id.* at 16. Such should be the case instantly, where the Commonwealth Court rightfully chose to adhere to this principle in light of the instructive affidavit supplied by the PSP. Indeed, even Appellant concedes that "[t]here may be some instances when it is easy to determine whether the affiant has correctly described the record at issue", thus precluding the necessity of an *in camera* review. Brief for ACLU at 16. I see no reason to think that Major Burig's Affidavit did not deserve this treatment, especially when considering the agency's burden under the RTKL.

Today's holding requires reviewing courts to undertake processes that, as I believe here, are not needed. By holding otherwise, I fear we are encumbering our tribunals in a way that prohibits the expeditious and efficient resolution of RTKL issues, and with tasks that simply are not necessary. *See Bowling v. Office of Open Record*s, 75 A.3d 453, 482 (Pa. 2013) (Todd, J., dissenting) ("[A]s noted by the Commonwealth Court, the most recent iteration of the RTKL reflects an intent by the legislature that issues regarding access to public records be conducted in an expeditious and efficient manner."). Since the PSP has proven by a preponderance of the evidence that the public safety exception applies, I respectfully dissent.