IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,       :
           Petitioner       :
      :
      v.       :
      :
American Civil Liberties       :
Union of Pennsylvania,       :    No. 1066 C.D. 2017
           Respondent       :    Submitted: June 4, 2021

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: November 17, 2021

This case is before us on remand from the Pennsylvania Supreme Court, which directed that in reviewing the Final Determination of the Office of Open Records (OOR), we are to consider the entire record that was before the OOR, including conducting an *in camera* review of an unredacted document sought by Respondent, the American Civil Liberties Union of Pennsylvania (Requester) from Petitioner, the Pennsylvania State Police (PSP). After an *in camera* review of the document at issue, we vacate the OOR's Final Determination directing disclosure of the unredacted document and remand to the OOR for further proceedings.

# I. Background

Our detailed statement of facts and legal analysis in this matter are set forth in full in our previous opinion. *See Pa. State Police v. Am. Civ. Liberties Union of Pa.* (Pa. Cmwlth., No. 1066 C.D. 2017, filed May 18, 2018), 2018 Pa. Commw. Unpub. LEXIS 275 (unreported) (*ACLU-I*), *vacated*, 232 A.3d 654 (Pa. 2020) (*ACLU-II*). We repeat here only those portions necessary to our decision on remand.

Requester submitted a record request to PSP pursuant to the Right-to-Know Law (RTKL)[1] seeking "a copy, in digital format, of [PSP]'s complete, un[]redacted AR 6-9 regulation, which establishes policies and procedures for PSP personnel when using social media monitoring software." Reproduced Record (R.R.) at 2a. PSP provided a heavily redacted copy of the requested document, titled "Real-Time Open-Source-Based Investigations and Research," R.R. at 7a-15a, asserting that the redacted portions were exempt from disclosure under Section 708(b)(2) of the RTKL, 65 P.S. § 67.708(b)(2), because disclosure of the information would be reasonably likely to threaten public safety or preparedness.[2] R.R. at 3a-4a.

Requester filed an appeal with OOR. Before OOR, PSP argued that release of the requested information would allow individuals with nefarious motives

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] Section 708(b)(2) of the RTKL, known as the public safety exemption, protects

> [a] record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity or a record that is designated classified by an appropriate Federal or State military authority.

65 P.S. § 67.708(b)(2).

to more easily conceal their criminal activity and evade police scrutiny. *See* R.R. at 29a-30a. PSP submitted an affidavit from its Director of the Bureau of Criminal Investigation (BCI), Major Douglas J. Burig. *See* R.R. at 31a-34a. In his affidavit, Major Burig addressed each redacted section of AR 6-9, explaining its nature and asserting that disclosure could jeopardize an investigation. *See id.*

Requester challenged Major Burig's affidavit, arguing that it failed to link each section's redactions to reasonable public safety concerns. *See* R.R. at 36a-39a. After reviewing an unredacted copy of AR 6-9 *in camera*, the OOR Appeals Officer found that "the threats outlined in PSP's affidavit simply do not match the text of the policy." Br. of Pet'r, App. A (Final Determination) at 9. Ultimately, therefore, the OOR Appeals Officer concluded that the redacted information was not reasonably likely to jeopardize public safety and hence was not exempt from disclosure. Final Determination at 10. OOR ordered PSP to provide Requester with unredacted copies of all responsive records within 30 days. PSP then petitioned this Court for review.

In *ACLU-I*, this Court reviewed Major Burig's affidavit, but we did not conduct our own *in camera* review of the unredacted document. *Id.*, slip op. at 7-13. We concluded that the affidavit was sufficiently detailed to sustain PSP's burden of proof, in that it "(i) described the nature of the records sought; (ii) connected the nature of AR 6-9 to the reasonable likelihood that disclosure would threaten public safety and impair PSP's public safety function; and (iii) noted that disclosure would allow certain individuals to more easily conceal their criminal activities and evade police scrutiny." *ACLU-I*, slip op. at 12 (citing *Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 376 (Pa. Cmwlth. 2013)). We concluded that an *in camera* review was "unnecessary given the detailed nature of Major Burig's [a]ffidavit . . . ." *ACLU-I*,

3

slip op. at 13. We also relied on the fact "that Requester conceded at oral argument that this Court could decide this matter without conducting an *in camera* review." *Id.*; *see generally ACLU-II*. Further, we reasoned that the situation presented here was not analogous to those where courts typically view unredacted documents *in camera*. *Id.*

After granting *allocatur*, our Supreme Court vacated our decision in *ACLU-II* and remanded the matter to this Court for further proceedings. The Court specifically directed us to conduct an *in camera* review of the unredacted AR 6-9 on remand.

## II. Discussion

In his affidavit, Major Burig attested that the regulation at issue "concerns investigative and intelligence gathering policies, procedures, and methods." R.R. at 32a. He explained that the redactions were made "because public release of these sections would jeopardize PSP's ability to conduct criminal investigations and other law enforcement activities it engages in to protect the public." *Id*. Major Burig then separately stated PSP's reason for each redaction. We review the OOR's determinations regarding each of Major Burig's specific assertions in light of our *in camera* review.

PSP redacted the entirety of Section 9.03 of AR 6-9 except for the heading, "Utilization of Real-Time Open Sources[3] as an Investigative Tool." R.R.

---

[3] Open-source intelligence "is an important tool law enforcement agencies can use to guide an investigation. [It] encompasses a wealth of publicly available information, from traditional print publications to today's vast array of digital media outlets." https://www.police1.com/investigations/articles/using-webint-and-osint-to-tackle-extremist-groups-Fvy2So5OzaAoNLTC/#:~:text=OSINT%2C%20or%20open-source%20intelligence%2C%20is%20an%20important%20tool,can%20gather%20a%20multitude%20of%20leads%20through%20OSINT (last visited Nov. 16, 2021).

4

at 8a-10a. Major Burig stated that this section describes how investigating PSP Troopers are to use open sources during an investigation, when they may and may not use open sources, and when they may want to use alternative methods. *Id*. at 32a. Major Burig posited that disclosure would allow individuals to undermine investigations and would disadvantage PSP because individuals would know when PSP can monitor their activities using open sources and could use that information to conceal their activities. *Id*. The OOR Appeals Officer, on the other hand, found that "[t]he text of the prohibitions and authorizations within this section [] is broad, in contrast with the narrow scope of the prohibitions, and the prohibitions are based on known law." Final Adjudication at 6-7.

Our review of Section 9.03 reveals that it lists the categories of valid law enforcement purposes for which monitoring may be employed and includes limitations to assure compliance with statutory and constitutional requirements. However, the text of Section 9.03 and the description and statements in the affidavit concerning the risks arising from disclosure are insufficient to allow us to determine whether disclosure of the text of Section 9.03 could reasonably be expected to aid criminals in evading detection of illegal activities. Accordingly, we cannot determine from the current record whether disclosure of this section would be reasonably likely to threaten public safety or preparedness.

PSP redacted the entirety of Section 9.04 of AR 6-9 except for the heading, "Authorization to Access Real-Time Open Sources and/or Real-Time Open Source Networks." R.R. at 10a-11a. Major Burig stated that this section describes when a Trooper must obtain a supervisor's approval in an investigation and what steps may be taken to further that investigation, including the approval process to establish a specific investigative method. *Id*. at 32a. Major Burig posited that

disclosure would expose the specific investigative method and allow those involved in criminal activity to impede investigations. *Id*.

Our review indicates that this section states when a supervisor's authorization is needed for on-line investigations and the purposes for which an investigator may use an on-line alias. Like Section 9.03, however, the text of Section 9.04 and the description and statements in the affidavit concerning the risks arising from disclosure are insufficient to allow us to determine whether disclosure of the text of Section 9.04 could reasonably be expected to aid criminals in evading detection of illegal activities. Accordingly, we cannot determine from the current record whether disclosure of this section would be reasonably likely to threaten public safety or preparedness.

PSP redacted the entirety of Section 9.05 of AR 6-9, except for the heading, "Authorization Procedures for the Use of Online Aliases and Online Undercover Activity." R.R. at 11a-13a. Major Burig explained this section concerns PSP's ability to use open sources in an undercover capacity and provides policies, procedures, and operational details regarding undercover activity. *Id*. at 33a. He stated that this information would provide criminals with tactics PSP uses when conducting undercover investigations, thereby jeopardizing PSP's investigations and ability to catch individuals. *Id*.

Our review of Section 9.05 reveals that it states the forms required and the procedures to be followed in documenting approval for using and altering aliases and conducting on-line investigations. Like Section 9.03, Section 9.05 includes some limitations to assure compliance with statutory and constitutional requirements. However, the text of Section 9.05 and the description and statements in the affidavit concerning the risks arising from disclosure are insufficient to allow

6

us to determine whether disclosure of the text of Section 9.05 could reasonably be expected to aid criminals in evading detection of illegal activities. Accordingly, we cannot determine from the current record whether disclosure of this section would be reasonably likely to threaten public safety or preparedness.

PSP redacted the entirety of Sections 9.06, 9.07 and 9.08, except for the headings "Deconfliction," "Utilizing Real-Time Open Source Monitoring Tools," and "Source Reliability and Content," respectively, as well as Subsection C of Section 9.09, which appears under the heading "Documentation and Retention." R.R. at 14a-15a. Major Burig explained that these sections contain information regarding when an investigation may be terminated, situations in which to use open source methods, and procedures used to verify the information obtained. *Id.* at 33a. He stated that disclosure of this information would reveal how PSP conducts its investigations using open sources, thereby jeopardizing PSP's ability to conduct such investigations in the future. *Id.*

Our review reveals that Section 9.06 provides for avoiding duplication in the use of aliases. Section 9.07 authorizes use of real-time open source monitoring when appropriate. Section 9.08 requires corroboration of information obtained by the use of such monitoring. Section 9.09, including Subsection 9.09C, governs retention of information obtained from such monitoring and is general in nature. However, the text of these sections and the descriptions and statements in the affidavit concerning the risks arising from their disclosure are insufficient to allow us to determine whether disclosure of the text of these sections could reasonably be expected to aid criminals in evading detection of illegal activities or to aid unacceptable candidates in hiding unfavorable background information. Accordingly, we cannot

determine from the current record whether disclosure of these sections would be reasonably likely to threaten public safety or preparedness.

PSP redacted the entirety of Section 9.10 of AR 6-9, except for the heading, "Utilization of Real-Time Open Sources for Employment Background Investigations." R.R. at 15a. Major Burig explained that PSP conducts background investigations on employees and may use open sources to determine whether a candidate for Trooper is suitable for employment. *Id*. at 33a. He stated that the information was redacted because it would jeopardize PSP's ability to hire qualified individuals and that disclosure would reveal the specific information that may be reviewed to determine whether a candidate is suitable for employment. *Id*. He further explained that PSP takes steps to ensure candidates are suitable for employment in order to protect the public and the "Department." *Id*.

Like most of the other sections of AR 6-9, Section 9.10 contains provisions allowing background investigations of candidates for employment and includes limitations to assure compliance with statutory and constitutional requirements. However, the text of Section 9.10 and the description and statements in the affidavit concerning the risks arising from disclosure are insufficient to allow us to determine whether disclosure of the text of Section 9.10 could reasonably be expected to aid criminals in evading detection of illegal activities or to aid unacceptable candidates in hiding unfavorable background information. Accordingly, we cannot determine from the current record whether disclosure of this section would be reasonably likely to threaten public safety or preparedness.

Major Burig also addressed Section 9.02 of AR 6-9, entitled "Definitions," under which some of the terms and their definitions were redacted. R.R. at 7a. Major Burig stated that disclosure of the redacted language would

8

provide insight into how PSP conducts an investigation and what sources and methods it would use. *Id*. at 33a.

However, our review of the text of Section 9.02 and the description and statements in the affidavit concerning the risks arising from disclosure are insufficient to allow us to determine whether disclosure of the redacted language in this section would be reasonably likely to threaten public safety or preparedness.

In general, is it the burden of the party resisting disclosure to establish that an exemption from the RTKL applies. *See Pa. State Police v. Muller*, 124 A.3d 761, 766 (Pa. Cmwlth. 2015). However, where the subject matter of a request involves public safety or security, such as in police matters, careful consideration of a complete record is especially important, and supplementation of the record, if necessary, is appropriate. For example, in *Carey*, the requester sought information concerning inmate transfers. 61 A.3d at 370. The OOR denied the request pursuant to the public safety exception:

> As to whether the disclosure would threaten public safety, the OOR considered the affidavit submitted by [the Department of Corrections (DOC)]. That affidavit attested that the responsive records would reveal the names of DOC officials responsible for transfers, and reveal security and logistical procedures to transfer custody of inmates. These revelations would allow interference with DOC security measures and thus threaten DOC, inmate and general public safety.

*Id.* at 371. DOC presented an affidavit from its Director of the Office of Population Management, who opined, *inter alia*, that "disclosing responsive records would foster retaliation against DOC and jeopardize the security of future transfers, and allow inmates to manipulate the eligibility assessment for transfer." *Id.* at 375. On review, this Court concluded DOC's affidavit failed to explain which requested

9

records were protected from disclosure, failed to connect the responsive records with a threat to public safety, and failed to explain how disclosure of the requested information would be likely to impair transfers. *Id.* at 377. Notwithstanding DOC's failure to sustain its burden of proof, however, we declined to decide the case on that basis, determining that "the records relate to prison operations, heightening the risk associated with disclosure. Without more information, we would be remiss in deciding this case on the current record." *Id.* We observed that "[w]hen security-related exemptions are asserted in the police or prison context, and responsive records implicate valid security concerns, and an agency's proof is insufficient to discern the contents of responsive records, seeking additional evidence may be appropriate." *Id.*; *see also Delaware Cnty. v. Schaefer*, 45 A.3d 1149, 1158-59 (Pa. Cmwlth. 2012) (remanding for additional evidence where existing record did not permit determination of whether disclosure of requested information would pose risk to personal security); *Commonwealth v. Rudberg*, 32 A.3d 877, 882 (Pa. Cmwlth. 2011) (court's broad scope of review authorizes remand to OOR where necessary to supplement the record); *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1040 (Pa. Cmwlth. 2011) (remanding for additional evidence where, although parties were not prevented from presenting evidence initially, information request implicating physical safety and personal security issues was "a serious matter that deserve[d] thoughtful consideration on a complete record"); *cf. Muller*, 124 A.3d at 766 (declining to allow supplementation of record where PSP had not "articulated any security related, public safety, or like considerations that favor supplementation").

Here, although PSP was afforded an opportunity to present an affidavit in support of nondisclosure, and despite Major Burig's effort to be as explicit as

possible in explaining the risks of disclosing the full text of AR 6-9, the affidavit is insufficient to connect the text of AR 6-9 with the risks he articulates. However, we recognize that an affiant may walk a fine line in attempting to offer sufficient specificity to describe such risks without effectively divulging the contents of the documents at issue. Moreover, as in *Carey*, "[w]hen security-related [exemptions] are asserted in the police or prison context, and responsive records implicate valid security concerns, and an agency's proof is insufficient to discern the contents of responsive records, seeking additional evidence may be appropriate." 61 A.3d at 377. Accordingly, in this instance, because additional development of the record is necessary, we conclude that PSP should be given a further opportunity to explain the nature and degree of the risks it claims are inherent in potential disclosure of the contents of AR 6-9. *See id.*; *Schaefer*, 45 A.3d at 1158-59; *Rudberg*, 32 A.3d at 882; *A Second Chance*, 13 A.3d at 1040.

### III. Conclusion

Our *in camera* review of AR 6-9 and Major Burig's attestation were insufficient to allow us to determine whether disclosure of all provisions of AR 6-9 would provide specific tactical information that could reasonably be expected to aid criminals in evading detection of illegal activities. Accordingly, we conclude that further development of the record is required. Therefore, we vacate the OOR's Final Determination and remand this matter to the OOR for further supplementation of the record, including an evidentiary hearing, and issuance of a new determination.

_____
CHRISTINE FIZZANO CANNON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,           :
           Petitioner          :
                             :
         v.                 :
                             :
American Civil Liberties          :
Union of Pennsylvania,         :    No. 1066 C.D. 2017
           Respondent      :

## O R D E R

AND NOW, this 17th day of November, 2021 the Final Determination of the Office of Open Records (OOR) is VACATED, and this matter is REMANDED to the OOR for further supplementation of the record, including an evidentiary hearing, and a new determination.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge