**Barry WOODS, Petitioner**

v.

**OFFICE OF OPEN RECORDS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 26, 2010.

Decided June 10, 2010.

Barry Woods, petitioner, pro se.

Corinna V. Wilson, Chief Counsel, Harrisburg, for respondent.

John J. Talaber, Asst. Counsel, Harrisburg, for intervenor, Pennsylvania Board of Probation and Parole.

BEFORE: LEADBETTER, President Judge, SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY President Judge LEADBETTER.

Barry Woods, acting *pro se*, petitions for review of the August 24, 2009 final determination of the Office of Open Records (OOR) that denied his appeal from the partial denial of his request for "PBPP Manual Chapter 4–Sex Offender Supervision Protocol" by the Pennsylvania Board of Probation and Parole (Board) pursuant to Section 708(b)(2) of the Right–to–Know Law (the Law).[1] Section 708(b)(2) of the Law exempts from public access, *inter alia*, records relating to law enforcement or other public safety activity "that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity...." The Board's open records officer provided Woods with the requested policy, but with two sections redacted: "Polygraph" and "Supervision Strategies." Woods having conceded his argument on the "Polygraph" section, the only issue before us is whether the OOR erred in determining that the Board met its burden of proving that the "Supervision Strategies" section should be exempt from public disclosure under Section 708(b)(2) of the Law.[2] We affirm.[3]

The background of this case is as follows. On June 22, 2009, Woods submitted a right-to-know request to the Board seeking its policy on sex offender supervision. The Board's open records officer invoked the thirty-day extension for legal review. Thereafter, she supplied Woods with a copy of the policy, but with the aforementioned sections redacted. Woods appealed the Board's partial denial, asserting that the requested information constituted a public record because it contained the criteria for analyzing the home plans that sex offenders must submit for parole consideration.[4] He further maintained that the

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b)(2).

2. Pursuant to Section 305(a) of the Law, 65 P.S. § 67.305(a), "[a] record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record." This presumption does not apply, however, if the record is exempt under Section 708 of the Law, 65 P.S. § 67.708. In any event, exemptions from disclosure must be narrowly construed "[a]s the Law is remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions...." *Bowling v. Office of Open Records,* 990 A.2d 813, 824 (Pa.Cmwlth.2010).

3. In its brief, the OOR argues in depth regarding what this Court's proper review standard should be in cases involving the Law. In *Bowling,* which was decided after the OOR's brief was filed, this Court resolved that question. The Court held that while we review OOR appeals in our appellate jurisdiction, the appeals are subject to independent review and fact-finding. In addition, we noted that we are not prohibited from supplementing the record through hearing or remand.

4. In its brief, the Board notes that there is no dispute that Woods requested a "record" as

failure to make the policy available in its entirety unfairly disadvantaged sex offenders, stating that "[w]e cannot follow the rules if we do not *know* the rules." Certified Record ("C.R."), Tab 4 at p. 2 (emphasis in original).

Upon initial review of Woods' appeal, the OOR appeals officer noted that the Board had to establish by a preponderance of the evidence that its redactions were protected under Section 708(b)(2) of the Law.[5] To that end, she sent a letter to the Board, stating:

Kindly explain how the redactions from the Manual are connected to law enforcement or other public safety activity, and the basis for concluding that their release is "reasonably likely" to threaten public safety/protection. Your submission should include citation to applicable legal authority and/or submission of documentary support, such as a sworn statement, to support any facts upon which your conclusion relies.

C.R., Tab 6 at p. 1. Specifically with regard to the significant redactions in the "Supervision Strategies" section," she asked the Board to "outline the type of information contained within those pages, to include the headers only to indicate the type of information contained therein, without revealing any of its substance." *Id.* In response, the Board submitted a letter from Assistant Counsel John J. Talaber and an affidavit from Deputy Executive Director John Tuttle.[6]

In compliance with the appeals officer's request, the assistant counsel in his letter recited the headers of the redacted "Supervision Strategies" section:

  (a) Face to Fact contacts (pp. 5–7);

  (b) Residential Assessments (pp. 7–8);

  (c) Contacts with Sex Offender Treatment professionals (p. 8);

  (d) Sex Offenders Residing in Community Corrections Centers (p. 8); and

  (e) Transfer of Sex Offender Case to General Caseload Status (p. 8).

C.R., Tab 7; Assistant Counsel's Letter at pp. 3–4. In addition, he presented the Board's legal and factual grounds for the redactions, attaching an affidavit of the deputy executive director, John Tuttle, in support thereof.

In the affidavit, Tuttle noted that in his capacity as deputy executive director for the Board, he oversees the promulgation and administration of parole supervision policies, procedures and practices. He averred that the Board promulgated the policy at issue "to advise its employees on procedures and practices that may be used to supervise a sex offender on parole" and "to explain to Board staff specialized aspects concerning the supervision of sex offenders." *Id.;* Affidavit at ¶ 17. He pointed out that it is the job of parole

---

defined in Section 102 of the Law, 65 P.S. § 67.102, or that substantial portions of that record were "public" in nature.

**5.** Section 708(a)(1) of the Law provides that "[t]he burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the Commonwealth agency or local agency receiving a request by a preponderance of the evidence." 65 P.S. § 67.708(a)(1). A preponderance of the evidence has been defined as follows:

The greater weight of the evidence, not necessarily established by the greater number of witnesses testifying to a fact but by evidence that has the most convincing force; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.

Black's Law Dictionary 1301 (9th ed. 2009).

**6.** Tuttle made his statement and verified it subject to the penalties of Section 4904 of the Crimes Code, 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

agents to "provide professional services to protect the safety of the public, ensure accountability for crimes committed, and connect offenders with appropriate resources to assist in their successful reintegration into the community." *Id.*; Affidavit at ¶ 6. He noted that, in doing their jobs, "[p]arole agents must undertake a range of strategies and interventions geared to the varying risks presented by the offenders." *Id.*; Affidavit at ¶ 8.

Tuttle further explained that the Board withheld the redacted materials concerning existing parole supervision procedures and practices for the following reasons:

23. Here too, the aforementioned information was withheld because if a sex offender specifically knew: (1) how the parole agent monitored the sex offender's deviant cycle (i.e. past patterns of behavior that led to the sexual offense); (2) High Risk situations (e.g. possible contact with victims or specific situations); (3) Sexual Behaviors; (4) Treatment Activities; and (5) Residential Assessment factors that could indicate that the sex offender is re-offending, *the assessment tools could be manipulated.*

24. *Sex offenders who have knowledge of the scope and limits of the aforementioned procedures and practices would be reasonably likely to perform illicit activity, or similarly exploit the limitations of the parole agent's review.*

25. Moreover, *dissemination of the redacted information would reveal the capabilities and the scope of the Board's sex offender management procedures and policies.*

26. The Board's public protection activity in monitoring and supervising sex offenders would be jeopardized by allowing public access to the requested information.

27. If the redacted information was determined to be a "public record," it would certainly be used by sex offenders to circumvent existing parole supervision procedures and practices, and therefore, would necessarily threaten public safety to the community at large. *Id.*; Affidavit at ¶¶ 23–27 (emphasis added).

Ultimately, the appeals officer denied Woods' appeal. She determined that the Board is qualified as a "public protection agency," noting that "[t]he function of monitoring and supervising sex offenders on parole is a public protection activity, such that a threat to the performance of that public protection activity could compromise public safety, particularly for communities into which parolees are being integrated." Final Determination at p. 5. In addition, she concluded that the Board met its burden of proving that there was a reasonable likelihood that disclosure of the redacted section on "Supervision Strategies" would threaten public safety. Woods' timely appeal to this Court followed.[7]

On appeal, Woods first argues that the Board unlawfully denied his record request based on his status as a sex offender and would not have made the redactions if he were merely a citizen making the request. He points out that the Law requires that all requesters be treated equally, regardless of the reason for their request or their intended use of the record.

The Board agrees with Woods that his status as a sex offender should not be relevant to consideration of his request.

---

7. Woods' brief is not compliant with Pennsylvania Rule of Appellate Procedure 2111. Given the importance of the issue before us, however, we will endeavor to address any cognizable arguments that Woods preserved on appeal.

It acknowledges that it is required to provide public records in accordance with the Law and that it "may not deny a requester access to a public record due to the intended use of the public record by the requester unless otherwise provided by law." Section 301(b) of the Law, 65 P.S. § 67.301(b). Having so acknowledged, the Board maintains that, contrary to Woods' assertion, it is not claiming that the redacted portions should be exempt only from sex offenders, but also from all other members of the public save for authorized Board employees. It contends that disclosure of the complete policy to even a random member of the public could result in its circulation to anyone in the world.

We agree that the Board's refusal to provide Woods with the entire policy does not constitute an unequal treatment of requesters. Even though the Board obviously is concerned specifically with a sex offender's possible misuse of the redacted portion if disclosed, the specificity of that concern does not negate the applicability of the public safety exemption. In other words, even though a Commonwealth agency may not deny a requester access to a public record based on the suspected use of that record by the requester, it can deny access where "otherwise provided by law." 65 P.S. § 67.301(b). Pertinent to the present case, if the public protection exemption applies, the presumption that a record in possession of a Commonwealth agency is a public record does not apply. The point of the exemption is that the record is not public to anyone not authorized to have access, be that person a sex offender or a general member of the public.

Woods next represents that because the Wayne County Probation and Parole in the State of New York provided him with a copy of its supervision procedures for sex offenders when he was considering a home plan there, Pennsylvania officials similarly should have complied with his request for a comparable record. He maintains that New York officials wanted him to know what was expected of him in the event of parole to that state and that Pennsylvania should have a similar interest.

In response, the Board maintains that it is irrelevant in the present case what the state of New York did or did not provide to Woods. What is relevant is whether this Court agrees with the OOR that the Board met its burden of proving that the "Supervision Strategies" section was exempt from public disclosure under Section 708(b)(2) of the Law. We agree.

Woods further maintains that due process requires that the conditions of a supervised release must afford a person of reasonable intelligence with a reasonable opportunity to know what behavior is prohibited so that he may act accordingly. Again, the Board agrees with Woods. It asserts, however, that it provides parolees with written general conditions that must be followed while on parole and, sometimes, written special conditions. 37 Pa. Code §§ 67.1 and 63.5. It points out that parolees must acknowledge receipt of any conditions imposed, 37 Pa.Code § 67.3, and that if they violate any of those conditions, they may be returned to incarceration, 37 Pa.Code § 63.3. In addition, it notes that the unredacted part of the policy that Woods did receive included the numerous notices sex offenders on parole may receive to ensure that they do not have access to victims or potential victims or become involved in circumstances or go to places that may support their re-offense cycle. The Board, therefore, maintains that it already does provide parolees with a reasonable opportunity to know what behavior is prohibited. We agree with the Board and turn now to the specific ques-

tion of whether the OOR erred in concluding that the Board carried its burden.

 In arguing that the Board met its burden of proving by a preponderance of the evidence that the "Supervision Strategies" section should be exempt from public disclosure, the OOR reiterates the evidence that it relied upon in rendering its final determination—the assistant counsel's letter and Tuttle's affidavit, the latter of which we quoted extensively herein. The OOR points out that the preponderance of evidence standard does not require absolute certainty that if redacted portions were to be disclosed, there would be a breach of public safety or an inhibition of the parole officers to perform their public protection duties, but only a reasonable likelihood that public safety would be jeopardized.

This Court has carefully reviewed the evidence relied upon, particularly the Tuttle affidavit. Additionally, exercising an independent review of this matter as we are permitted to do under *Bowling,* it appears from the evidence submitted that the "Supervision Strategies" section is just what the title implies, a strategic guide for Board employees to employ when monitoring and supervising sex offender parolees. Provision of such to those who are the subject of supervision *or* to any member of the public would impair the effectiveness of that supervision, and thus threaten public safety. Therefore, we conclude that the OOR did not err in determining that the Board proved by a preponderance of the evidence that disclosure of the redacted "Supervisions Strategies" section "would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity...." 65 P.S. § 67.708(b)(2). Accordingly, we affirm.

### ORDER

AND NOW, this 10th day of June, 2010, the final determination of the Office of Open Records in the above-captioned matter is hereby AFFIRMED.