IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,          :
          Petitioner        :
                                 :
        v.                    :
                                 :
American Civil Liberties        :
Union of Pennsylvania,         :   No. 1066 C.D. 2017
          Respondent     :   Argued:  March 8, 2018


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED:  May 18, 2018

        The Pennsylvania State Police (PSP) petitions for review of a Final Determination of the Pennsylvania Office of Open Records (OOR) granting the American Civil Liberties Union of Pennsylvania's (Requester) appeal and ordering PSP to provide Requester with unredacted copies of all responsive records within 30 days of the date of the determination.

        Requester submitted a request to PSP pursuant to the Right-to-Know Law (RTKL),[1] seeking PSP's social media policy.  In particular, Requester asked for "a copy, in digital format, of Pennsylvania State Police's complete, un-redacted AR 6-9 regulation, which establishes policies and procedures for PSP personnel when using social media monitoring software."  Reproduced Record (R.R.) at 2a.  PSP

_____

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

responded by granting in part and denying in part the request. R.R. at 3a-4a. Specifically, PSP provided Requester with a copy of the record but redacted non-public information that PSP stated was exempt from disclosure under Section 708(b)(2) of the RTKL,[2] *id.*, because disclosure of the information would be reasonably likely to threaten public safety or preparedness.

Requester filed an appeal with OOR. Before OOR, PSP argued that release of the requested information would allow individuals with nefarious motives to more easily conceal their criminal activity and evade police scrutiny. *See* R.R. at 29a-30a. PSP submitted an Affidavit from its Director of the Bureau of Criminal Investigation (BCI), Major Douglas J. Burig.[3] *See* R.R. at 31a-34a. In his Affidavit, Major Burig addressed each redacted section of AR 6-9, explaining its nature and how disclosure could jeopardize an investigation. *See id.* Requester challenged Major Burig's affidavit, asserting that it failed to link each section's redactions to reasonable public safety concerns. *See* R.R. at 36a-39a. Requester provided copies of unredacted social media policies from other law enforcement agencies in an attempt to show what is likely contained in AR 6-9 and that the disclosure of those sections cannot reasonably be viewed as threatening public safety. *See* R.R. at 48a-72a.

---

[2] 65 P.S. § 67.708(b)(2). Section 708(b)(2) of the RTKL, known as the public safety exemption, protects:

> A record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity or a record that is designated classified by an appropriate Federal or State military authority.

*Id.*

[3] The Affidavit was subscribed and sworn to under penalty of perjury. R.R. at 34a.

Subsequently, OOR ordered PSP to produce an unredacted copy of AR 6-9 for *in camera* inspection, R.R. at 78a-79a, and PSP did so. After reviewing the document *in camera*, the OOR Appeals Officer concluded that the redacted information is not reasonably likely to jeopardize public safety and therefore is not exempt from disclosure. Final Determination at 10. OOR ordered PSP to provide Requester with unredacted copies of all responsive records within 30 days. PSP then petitioned this Court for review.

Before this Court, PSP first argues that it provided sufficient evidence, *i.e.*, Major Burig's Affidavit, to prove that the redacted sections of AR 6-9 are exempt from disclosure. PSP argues that the Appeals Officer's statement that "'there is no evidence that knowledge of the prohibition will threaten public safety'"[4] is erroneous, because the Affidavit is evidence. Second, PSP argues that the OOR Appeals Officer erred when, following his *in camera* review of AR 6-9, he substituted his own judgment for that of Major Burig's regarding whether disclosure is "reasonably likely" to jeopardize PSP's ability to conduct investigations using open source methods. Finally, PSP argues that the Appeals Officer applied an erroneous legal standard when determining whether the redacted sections of AR 6-9 are public records under the RTKL. PSP asserts that the Appeals Officer determined that because the information was "generalized," "common knowledge," "broad," "based upon known law," "sufficiently vague" and that "no detail . . . could be manipulated by third parties[,]" the information is public record.[5] PSP maintains, however, that these are not the standards by which an exemption is measured; rather, the exemption looks to the harm that would result from disclosure.

---

[4] PSP's Brief at 15-16 (quoting Final Determination at 7).

[5] PSP's Brief at 21.

3

Requester, on the other hand, argues that the Affidavit was not sufficient to sustain PSP's burden. Requester maintains that while the Affidavit has the aura of detail, it is conclusory. Requester urges this Court to conduct an *in camera* review of AR 6-9.

In reviewing a final determination of the OOR involving a Commonwealth agency, this Court's standard of review is *de novo* and our scope of review is broad or plenary. *Bowling v. Office of Open Records*, 75 A.3d 453 (Pa. 2013).

A principle underlying the RTKL is to allow citizens to scrutinize government activity and increase transparency. *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029 (Pa. 2012). To that end, the RTKL provides that records in the possession of an agency are presumed to be public. Section 305(a) of the RTKL, 65 P.S. § 67.305(a). That presumption does not apply, however, if the record is exempt under Section 708(b) of the RTKL. Section 305(a)(1) of the RTKL, 65 P.S. § 67.305(a)(1); *Woods v. Office of Open Records*, 998 A.2d 665 (Pa. Cmwlth. 2010). "Exemptions from disclosure must be narrowly construed due to the RTKL's remedial nature . . . ." *Office of Governor v. Scolforo*, 65 A.3d 1095, 1100 (Pa. Cmwlth. 2013). "An agency bears the burden of proving, by a preponderance of the evidence, that a record is exempt from disclosure under one of the enumerated exceptions." *Brown v. Pa. Dep't of State*, 123 A.3d 801, 804 (Pa. Cmwlth. 2015); *see* Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1). "A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to a more likely than not inquiry." *Del. Cty. v. Schaefer ex rel. Phila. Inquirer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012).

4

PSP relied on the public safety exemption under the RTKL, *see* 65 P.S. § 67.708(b)(2), as the sole reason for redacting information. *See* R.R. at 3a-4a. To establish the public safety exemption, "an agency must show: (1) the record at issue relates to a law enforcement or public safety activity; and[] (2) disclosure of the record would be 'reasonably likely' to threaten public safety or a public protection activity." *Carey v. Pa. Dep't of Corrections*, 61 A.3d 367, 374-75 (Pa. Cmwlth. 2013). Here, OOR concluded that "[t]he record is, on its face, related to PSP's law enforcement duties, as it concerns procedures for PSP to use while gathering information on line." Final Determination at 5. Thus, the issue here is whether PSP met its burden of proving the second prong, *i.e.*, whether disclosure of the record would be "reasonably likely" to threaten public safety or a public protection activity.

"In interpreting the 'reasonably likely' part of the test, as with all the security-related exceptions, we look to the likelihood that disclosure would cause the alleged harm, requiring more than speculation." *Carey*, 61 A.3d at 375. However, "as clearly suggested by Section 708(b)(2) of the RTKL itself, the agency's burden does not include a requirement that the release of a record would *definitely* threaten or jeopardize public safety or protection." *Harrisburg Area Cmty. Coll. v. Office of Open Records* (Pa. Cmwlth., No. 2110 C.D. 2009, filed May 17, 2011), slip op. at 11 (emphasis in original).[6] Indeed, in *Woods*, this Court ruled that records were exempt from disclosure where the evidence indicated that a *possible* consequence of releasing the information would be the impairment of the agency's ability to perform its public safety function of monitoring certain individuals, thereby threatening public safety. *Woods*, 988 A.2d at 670; *see also HACC*, slip op.

---

[6] While this Court's unreported memorandum opinions may not be cited as binding precedent, they may be cited for persuasive value. Commonwealth Court Internal Operating Procedure § 414(a), 210 Pa. Code § 69.414(a).

at 11-12 (discussing *Woods* and stating that "evidence of even the potential impairment" of an agency's public safety function is sufficient to satisfy the agency's burden to demonstrate that a record is not subject to disclosure under Section 708(b)(2) of the RTKL).

To satisfy its burden of proof, an agency may submit an affidavit. *See Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010); *see also Global Tel\*Link Corp. v. Wright*, 147 A.3d 978, 980 (Pa. Cmwlth. 2016) (stating that an agency may satisfy its burden of proof by unsworn declarations made under penalty of perjury). In reviewing an affidavit where the public safety exemption is claimed, this Court must consider whether the affidavit:

> (1) includes detailed information describing the nature of the records sought; (2) connects the nature of the various records to the reasonable likelihood that disclosing them would threaten public safety in the manner described; such that[] (3) disclosure would impair [the agency's] ability to perform its public safety functions . . . [in relation to what the agency claims to be] the alleged threatening consequence.

*Carey*, 61 A.3d at 376. "Generally, whether an agency establishes this exception depends on the level of detail in the supporting affidavit." *Fennell v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 1827 C.D. 2015, filed March 29, 2016), slip op. at 5 (citing *Carey*); *see Carey*, 61 A.3d at 375 (discussing *Woods*).

For example, in *Woods*, we held that the agency established that its records concerning the Board of Probation and Parole's (Board) "supervision strategies" were exempt from disclosure. *See Woods*, 998 A.2d at 666. The affiant described her role as deputy executive director for the Board, explained the purpose of the record, and provided details regarding the substance of the record and the

6

ways in which a sex offender might use the information to evade or avoid detection. *Id*. at 667-68. The critical factor in this Court's decision was the detail which the affiant provided regarding the substance of the records and the ways in which a sex offender might use the information to evade or avoid detection. *See Carey*, 61 A.3d at 375 (discussing *Woods*).

By contrast, in *HACC*, we found the affidavit submitted did not contain sufficient detail to establish the public safety exemption. There, the requester sought training curricula used to teach police officers about making arrests for driving under the influence (DUI). *HACC*, slip op. at 1. HACC submitted an affidavit in which its affiant stated, "[b]ased upon my professional experience and judgment [as director of the Municipal Police Officer Education and Training Commission], a disclosure of the Commission's DUI curriculum in response to this RTKL request would be reasonably likely to jeopardize or threaten the Commission's statutorily-mandated public protection activity." *Id*., slip op. at 14. This Court found the affidavit conclusory because it did nothing more than assert that the release of the records would jeopardize the agency's public protection activity without describing in detail how such result might happen by virtue of the disclosure. *Id*.

With these standards and cases in mind, we will review Major Burig's Affidavit.

In his Affidavit, Major Burig recounted his experience. Major Burig explained that in his current position as Director of BCI, he is:

> responsible for overseeing Divisions responsible for intelligence gathering, specialized criminal investigation support units, complex criminal investigations, and drug investigations. In addition, [he is] responsible for making policy recommendations concerning intelligence

7

gathering/sharing and the conducting of criminal investigations.

R.R. at 31a. Major Burig also stated that prior to his current position,

> [he] served as the Director of the Intelligence Division within BCI where [he] oversaw PSP's counterterrorism initiatives, the state's primary Intelligence fusion center, and field intelligence operations throughout the Commonwealth. Over the course of [his] career, [he has] served in numerous disciplines within PSP including: patrol; criminal investigations; criminal investigation assessment; and analytical intelligence as the commander to the Pennsylvania Criminal Intelligence Center (PaCIC).

*Id*. at 31a-32a.

Major Burig then stated that the regulation at issue "concerns investigative and intelligence gathering policies, procedures, and methods." R.R. at 32a. He explained that "the purpose of the regulation is to establish policies and procedures for PSP Troopers when they use open sources for valid law enforcement purposes." *Id*. He further explained that the redactions were done "because public release of these sections would jeopardize PSP's ability to conduct criminal investigations and other law enforcement activities it engages in to protect the public." *Id*. Major Burig then discussed each section that contained redactions. We will review his Affidavit as it pertains to each section.

PSP redacted the entirety of Section 9.03 of AR 6-9 except for the heading, "Utilization of Real-Time Open Sources as an Investigative Tool." R.R. at 8a-10a. Major Burig stated that this section describes how investigating PSP Troopers are to use open sources during an investigation, when they may and may not use open sources, and when they may want to use alternative methods. *Id*. at 32a. Major Burig explained that disclosure would allow individuals to undermine

8

investigations and disadvantage PSP because individuals would know when PSP can monitor their activities using open sources and conceal their activities. *Id*.

PSP also redacted the entirety of Section 9.04 of AR 6-9 except for the heading, "Authorization to Access Real-Time Open Sources and/or Real-Time Open Source Networks." R.R. at 10a-11a. Major Burig stated that this section describes when a Trooper must obtain a supervisor's approval in an investigation and what steps may be taken to further that investigation, including the approval process to establish a specific investigative method. *Id*. at 32a. Major Burig stated that disclosure would expose the specific investigative method and allow those involved in criminal activity to impede investigations. *Id*.

PSP also redacted the entirety of Section 9.05 of AR 6-9, except for the heading, "Authorization Procedures for the Use of Online Aliases and Online Undercover Activity." R.R. at 11a-13a. Major Burig explained this section concerns PSP's ability to use open sources in an undercover capacity and provides policies, procedures and operational details regarding undercover activity. *Id*. at 33a. He further explained that disclosure of this information would provide criminals with tactics PSP uses when conducting undercover investigations, thereby jeopardizing PSP's investigations and ability to catch individuals. *Id*.

PSP also redacted the entirety of Sections 9.06, 9.07 and 9.08, except for the headings "Deconfliction," "Utilizing Real-Time Open Source Monitoring Tools," and "Source Reliability and Content," respectively, as well as subsection (c) of Section 9.09, entitled "Documentation and Retention." R.R. at 14a-15a. Major Burig explained that these sections contain information regarding when an investigation may be terminated, situations in which to use open source methods, and procedures used to verify the information obtained. He stated that disclosure of

9

this information would reveal how PSP conducts its investigations using open sources, thereby jeopardizing PSP's ability to conduct such investigations in the future. *Id*. at 33a.

PSP also redacted the entirety of Section 9.10 of AR 6-9, except for the heading, "Utilization of Real-Time Open Sources for Employment Background Investigations." R.R. at 15a. Major Burig explained that PSP conducts background investigations on employees and may use open sources to determine a candidate's, specifically a candidate for Trooper, suitability for employment. *Id*. at 33a. He explained the information was redacted because it would jeopardize PSP's ability to hire qualified individuals and that disclosure would reveal the specific information that may be reviewed to determine whether a candidate is suitable for employment. *Id*. He further explained that PSP takes steps to ensure candidates are suitable for employment in order to protect the public and the "Department." *Id*. at 33a.

Major Burig also addressed Section 9.02 of AR 6-9, entitled "Definitions," under which some of the terms and their definitions were redacted. R.R. at 7a. Major Burig stated that disclosure would provide insight into how PSP conducts an investigation and what sources and methods it would use. *Id*. at 33a.

Major Burig stated that the redacted procedures, policies, and information are uniform to all PSP investigations using open source methods. *Id*. He further stated that "[t]here is [a] reasonable likelihood that if any of the redacted information were to be disclosed it would threaten the public protection activity of PSP conducting criminal investigations and other valid law enforcement activities using open source methods." *Id*.

After review of Major Burig's Affidavit, we conclude that it was legally sufficient to sustain PSP's burden. In his Affidavit, Major Burig discussed his 22

10

years of experience involving criminal investigations, criminal investigation assessment, and intelligence operations. He also explained the purpose of AR 6-9 and the role of open sources in relation to PSP's law enforcement activities. Additionally, he addressed each section of AR 6-9 containing redacted information, stating the section title, describing the nature of the information redacted, and explaining how release of the information would jeopardize PSP's ability to conduct criminal investigations and other law enforcement activities. In particular, disclosure would: (i) allow individuals to know when PSP can monitor their activities using open sources and allow them to conceal their activities (concerning Section 9.03); (ii) expose the specific investigative method used (concerning Section 9.04); (iii) provide criminals with tactics PSP uses when conducting undercover investigations (concerning Section 9.05); (iv) reveal how PSP conducts its investigations (concerning Sections 9.06, 9.07, 9.08 and subsection (c) of Section 9.09); and (v) provide insight into how PSP conducts an investigation and what sources and methods it would use (concerning Section 9.02). R.R. at 32a-33a. Additionally, Major Burig explained that disclosure would jeopardize PSP's ability to hire suitable candidates, troopers in particular, because disclosure would reveal the specific information that may be reviewed as part of a background check to determine whether candidates are suitable for employment; candidates must be suitable to employ in order to protect the public (concerning Section 9.10). *Id*. at 33a.

Major Burig also stated there is a reasonable likelihood that disclosure would threaten PSP's public protection activity of conducting investigations and other valid law enforcement activities. *Id*. Where, as here, the affiant bases his conclusion that such harm is reasonably likely on his extensive experience, such

11

conclusion is not speculative or conclusory. *See Adams v. Pennsylvania State Police*, 51 A.3d 322 (Pa. Cmwlth. 2012) (finding that where the affiant based his conclusions on his extensive experience, the affidavit was the result of this experience and not mere speculation or conjecture).

Further, Major Burig's Affidavit was detailed and not conclusory in that it: (i) described the nature of the records sought; (ii) connected the nature of AR 6-9 to the reasonable likelihood that disclosure would threaten public safety and impair PSP's public safety function; and (iii) noted that disclosure would allow certain individuals to more easily conceal their criminal activities and evade police scrutiny. *See Carey*, 61 A.3d at 376. "This Court's decisions support protection of [records] under the public safety exception when the agency shows a nexus between the disclosure of the information at issue and the alleged harm." *Fennell*, slip op. at 5. Major Burig's Affidavit shows such a nexus. Accordingly, the Affidavit was legally sufficient, as a matter of law, to sustain PSP's burden.[7] OOR erred in concluding that PSP did not establish that the redacted portions of AR 6-9 are exempt from disclosure under the public safety exemption of the RTKL.

Finally, because Major Burig's Affidavit adequately described the nature of the redacted information and was legally sufficient to sustain PSP's burden, it is not necessary to review the unredacted record *in camera*, as Requester urges this

---

[7] Requester argues that it is at a significant disadvantage when challenging Major Burig's Affidavit because Requester cannot review the redacted portions of AR 6-9. As a result, Requester produced publicly available policies from three other police departments that, "based on their headings and language, seem substantially similar to AR 6-9." Requester's Brief at 9. Requester argues that those policies give insight into what is likely contained in the redacted portions of AR 6-9 and none of those sections can be reasonably viewed as threatening public safety. *Id.* We cannot assume that the language is, in fact, substantially similar to the redacted portions of AR 6-9, and what other police departments do with respect to releasing their policies is irrelevant to the present case. *See Woods*, 998 A.2d at 669.

12

Court to do. We note that Requester conceded at oral argument that this Court could decide this matter without conducting an *in camera* review. More importantly, however, we find it unnecessary to review the unredacted document under the circumstances here. In addition to such review being unnecessary given the detailed nature of Major Burig's Affidavit, in general, where this Court has reviewed an unredacted document *in camera*, those situations usually have involved exemptions claimed under the attorney-client privilege[8] or the predecisional deliberative process.[9] *See Twp. of Worcester v. Office of Open Records*, 129 A.3d 44, 60 (Pa. Cmwlth. 2016) (stating *in camera* review is appropriate to assess claims of privilege and predecisional deliberations). However, as PSP argues, those situations are distinguishable. There, the actual words on the page are key to the determination, whereas here, it is the effect of the disclosure that is key. In other words, here, the actual words on the page are not at issue; rather, the issue is whether disclosure of those words "would be 'reasonably likely' to threaten public safety or a public protection activity." *See Carey*. As stated, Major Burig's Affidavit sufficiently addresses that issue.

Accordingly, for the foregoing reasons, we reverse.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[8] *See, e.g.*, *Pa. Dep't of Educ. v. Bagwell*, 114 A.3d 1113 (Pa. Cmwlth. 2015) (stating *in camera* review is appropriate to assess claims of attorney-client and work-product privileges and the predecisional deliberative exception); *Office of Open Records v. Center Twp.*, 95 A.3d 354 (Pa. Cmwlth. 2014) (concerning attorney-client privilege and work-product doctrine); *Levy v. Senate*, 34 A.3d 243 (Pa. Cmwlth. 2011) (involving *in camera* review by this Court to assess attorney-client privilege).

[9] *See, e.g.*, *Bagwell*.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,          :
          Petitioner          :
                              :
      v.          :
                              :
American Civil Liberties          :
Union of Pennsylvania,          :    No. 1066 C.D. 2017
          Respondent          :

# O R D E R

AND NOW, this 18th day of May, 2018 the Final Determination of the Pennsylvania Office of Open Records dated July 7, 2017 is REVERSED.

_____

CHRISTINE FIZZANO CANNON, Judge