IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Croucher, : **CASES CONSOLIDATED**
      Petitioner : 
        :
     v. :
        :
Unemployment Compensation :
Board of Review, : Nos. 1485 & 1486 C.D. 2023
      Respondent : Submitted: February 4, 2025


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
      HONORABLE STACY WALLACE, Judge (P.)
      HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE        FILED: May 23, 2025


  In these consolidated appeals,[1] Mark Croucher (Claimant), *pro se*, petitions for review of the October 26, 2023 orders (Orders) of the Unemployment Compensation Board of Review which affirmed the decisions of an Unemployment Compensation referee (Referee) finding Claimant was unable and unavailable to work and, therefore, ineligible for unemployment compensation benefits (UC benefits) under Section 401(d)(1) of the Unemployment Compensation Law (UC Law), 43 P.S. § 801(d)(1).[2] After review, we affirm.

---

[1] By order dated February 2, 2024, this Court consolidated Claimant's petitions for review.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751- 919.10.

# BACKGROUND

Frito-Lay (Employer) employed Claimant full-time as a receiver at its warehouse. Certified Record (C.R.) at 107. In December 2020, Claimant became ill with COVID-19, which developed into COVID pneumonia. *Id*. at 108. Claimant applied for UC benefits with an effective application date of December 27, 2020. *Id*. at 48. The Department of Labor & Industry, Office of Unemployment Compensation Benefits (Department) issued two Notices of Determination on April 22, 2022, finding Claimant ineligible for UC benefits under Section 401(d)(1) of the UC Law. *Id*. at 3, 68. Claimant appealed the Notices to the Referee. *Id*. at 79.

On July 29, 2022, the Referee held a hearing. *Id*. at 103. The Referee took testimony from Claimant and Claimant's wife. *Id*. Claimant testified he tested positive for COVID-19 on December 26, 2020, and he had symptoms including a headache, cough, and fever, which initially lasted approximately six days. *Id*. at 108. Claimant indicated for the first six days, he was in bed with a high fever and body aches, and he "couldn't move." *Id*. After that, he felt better for one day, and then "it came back" and "went down to [his] lungs," which is when "it got really bad." *Id*. Claimant indicated he developed COVID pneumonia, and it lasted months. *Id*. Regarding the COVID pneumonia, Claimant (C) testified before the Referee (R) as follows:

> R: . . . [W]hen you got the pneumonia part of it, were you pretty much in bed the whole time or…
>
> C: Oh, yes.
>
> R: And how long did that last?
>
> C: You mean the pneumonia?
>
> R: Um-hum.

2

C: Probably before I could even really go downstairs and stuff, probably about three weeks.

R: Wow. Okay.

C: Before I got any energy. I mean, just to walk across the room was a task. You just-your oxygen count would drop. That was, like, in the-around 89, 88 because they told me to go to the emergency room if it dropped below 95. I've had breathing problems my whole life, so I understood, you know.

R: . . . . So-and then what about after that?

C: After?

R: After the three weeks in bed, then what?

C: I started getting a little bit of strength, it was just trying to be able to walk, you know, to even get enough energy to go to the mailbox, because you get so short of breath, and it gets way too hard. I mean it's hard to explain, but it's bad.

R: Yeah.

C: My goal was to walk- try to walk, you know, 20 yards. It took a while. It took me a few months before I could actually, you know- I could [walk] maybe 30 steps, I'd have to stop and breathe a little bit. I'd get light-headed because I wasn't getting enough oxygen. And, you know, just progress-the doctors told me I have to keep pushing myself, . . . but it took like five, six months before I felt a hundred-well, you know, like months. But the first two months were pretty-it wasn't pretty. Like I couldn't do nothing. I mean . . .

R: Okay. So . . . how long did your doctor have you completely off work then?

C: Two months.

. . . .

R: . . . And that was without restrictions?

3

C: Yes, just, you know, I had to take my time. Actually, my oxygen levels were still dropping around 93 to 94. I didn't want to go back to work. I thought I was moving around too much.

R: . . . . So during the time that you were home, there was no way you could have done anything, not even like-you couldn't have done like any kind of computer-based, like training or anything like…

C: For the first month, it was a task to even get a shower. That's . . .

R: So you weren't doing anything?

C: No.

*Id*. at 106-10.

Following the hearing, the Referee found Claimant "tested positive for COVID-19 and on day 6, the virus moved into his lungs (COVID pneumonia), and he was bedridden for at least three weeks." *Id*. at 117. The Referee determined Claimant "remained too sick from COVID-19/pneumonia symptoms to work in any capacity through his return-to-work date of March 1, 202[1]." *Id*. Accordingly, the Referee concluded that based upon Claimant's testimony, Claimant was unable and unavailable to work effective December 27, 2020, and effective January 2, 2021, to February 27, 2021, and thus was ineligible for UC benefits under Section 401(d)(1) of the UC Law. *Id*.

Claimant appealed to the Board. The Board adopted and incorporated the Referee's findings and conclusions but modified the Referee's decisions. *Id*. at 145. Specifically, the Board explained Claimant

> was bedridden for approximately three weeks after testing positive for COVID-19. [Claimant] acknowledged that he was unavailable for work after his positive COVID-19 test. As such, [Claimant] was neither able nor available for work starting with the claim week ending December 27, 2020 through January 31, 2020 [*sic*], pursuant to Section

4

401(d)(1) of the [UC] Law. [Claimant] was available for work with restrictions effective February 1, 2021.

*Id*. at 146. Therefore, the Board affirmed the Referee but modified the Referee's orders to deem Claimant eligible for benefits effective February 1, 2021. *Id*.

Claimant now appeals the Board's Orders to this Court. On appeal, Claimant argues the Board erred by concluding he was unable or unavailable to work when he had COVID-19 and COVID pneumonia. Claimant's Br. at 10. Claimant alleges Employer would not permit him to come to work, but that he was available to do work from home. *Id*. Claimant asserts he was not hospitalized when he had COVID-19, and he could have worked from home if work had been available.[3] *Id*. In response, the Board argues it properly determined Claimant was unavailable for even light-duty at-home work during the relevant time period, and it based its findings on substantial evidence, including Claimant's own testimony. Board's Br. at 5. Additionally, the Board contends Claimant has waived any issues on appeal because his brief is underdeveloped due to its brevity, lack of citation to the evidentiary record, and lack of legal authority.

## DISCUSSION

Initially, we address whether Claimant preserved any issues for appellate review. The Board contends Claimant waived any issues on appeal by failing to adequately develop his challenge to the Board's Orders in his brief. Generally, when a claimant fails to address an issue in either his petition for review or his brief, the issue is waived. *Paul v. Pa. Pub. Util. Comm'n*, 299 A.3d 1069, 1078 (Pa. Cmwlth. 2023). However, this Court "is generally inclined to construe *pro se* filings

---

[3] Notably, Claimant references a "doctor's note" throughout his Brief and attached the "doctor's note" to his Brief on pages 9, 11, 13, and 22. However, by Order dated May 29, 2024, this Court struck those documents in conformance with Pennsylvania Rule of Appellate Procedure 1951(a), Pa.R.A.P. 1951(a), and, thus, we do not consider them.

liberally." *Smithley v. Unemployment Comp. Bd. of Rev.*, 8 A.3d 1027, 1029 n.6 (Pa. Cmwlth. 2020). Because Claimant's brief provides sufficient detail to enable us to discern his argument, meaningful appellate review of the merits is possible. *See Woods v. Off. of Open Recs.*, 998 A.2d 665 (Pa. Cmwlth. 2010). Accordingly, we will address the merits of Claimant's appeal.

We review orders of the Board to determine "whether the findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed." *Showers v. Unemployment Comp. Bd. of Rev.*, 64 A.3d 1143, 1146 n.4 (Pa. Cmwlth. 2013). The Board is the ultimate factfinder in unemployment compensation cases and is empowered to make credibility determinations. *McCarthy v. Unemployment Comp. Bd. of Rev.*, 829 A.2d 1266, 1269-70 (Pa. Cmwlth. 2003). So long as the record, taken as a whole, contains substantial evidence to support the Board's findings, those findings are conclusive on appeal. *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013). Substantial evidence is such "relevant evidence upon which a reasonable mind could base a conclusion." *Id*. In determining whether there is substantial evidence to support the Board's findings, this Court examines the testimony in the light most favorable to the prevailing party below and gives that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Johnson v. Unemployment Comp. Bd. of Rev.*, 502 A.2d 738 (Pa. Cmwlth. 1986).

Section 401 of the UC Law provides conditions that must be met for a claimant to be eligible for UC benefits. 43 P.S. § 801. Under Section 401(d)(1), to be eligible for UC benefits, a claimant must be "able to work and available for suitable work." 43 P.S. § 801(d)(1). A claimant is considered "available" when the

6

claimant is "ready, willing *and able* to accept employment and be actually and currently attached to the labor force." *Kuna v. Unemployment Comp. Bd. of Rev.*, 512 A.2d 772, 776 (Pa. Cmwlth. 1986). "It is axiomatic that unemployment compensation is not health insurance and does not cover physically or mentally ill persons during periods they are unemployable." *Id*. Thus, a claimant who is "physically unavailable for work is thereby disqualified from benefits" because otherwise, UC benefits would be akin to short-term disability benefits, which is not their purpose. *McCurdy v. Unemployment Comp. Bd. of Rev.*, 442 A.2d 1230, 1231 (Pa. Cmwlth. 1982).

Procedurally, a claimant who applies for unemployment benefits is presumed to be able and available for work. *Rhode v. Unemployment Comp. Bd. of Rev.,* 28 A.3d 237, 243 (Pa. Cmwlth. 2011) (citation omitted). However, this presumption is rebuttable by evidence that the claimant's physical condition limits the type of work he is available to accept or evidence that the claimant has voluntarily placed other restrictions on the type of job he is willing to accept. *Id*. (citation omitted). If the presumption of availability is rebutted, the burden shifts to the claimant to produce evidence that he is "able to do some type of work and that there is a reasonable opportunity for securing such work." *Id*. (citation omitted). Ultimately, it is the claimant's burden to prove availability for suitable work. *Id*.

Here, the Board concluded Claimant was too sick from COVID pneumonia symptoms to work from the claim week ending December 27, 2020, through January 31, 2021. This finding is supported by substantial evidence, specifically by Claimant's own testimony. Claimant stated he tested positive for COVID-19 and had symptoms including a headache, cough, and fever for approximately six days until he developed COVID pneumonia, which then caused his symptoms to get

7

"really bad." C.R. at 103. By Claimant's own admission he was "pretty much in bed the whole time" he was sick with COVID pneumonia, and it was approximately three weeks before he could "even really go downstairs." *Id.* In describing the first two months of his illness, Claimant stated "it wasn't pretty. Like, I couldn't do nothing." *Id.* Claimant admitted his doctor had him "completely off work" for those two months. *Id.* When the Referee asked Claimant if there was any way he could have done any work at home, including any kind of computer-based training, Claimant responded "[f]or the first month, it was a task to even get a shower" and that he was not doing anything during the period he was ill. *Id.*

Moreover, in his Claimant Questionnaire, Claimant indicated he "could not work due to COVID." *Id.* at 57. In response to the question "Are you able to work?" Claimant checked "no" and, by way of explanation, wrote "Covid 12/29/20 to 3/1/21." *Id.* at 58. On his Employment Separation Questionnaire, Claimant wrote: "I was unemployed from 12/29/20 to 3/1/21 due to COVID. Very sick with COVID. Could not breath[e]. I was to[o] sick to file for unemployment on the days I was off is the reason why I applied at the date I did for unemployment." *Id.* at 60.

Based on Claimant's clear admission that he was unable to work while he was ill with COVID, the Board's findings were supported by substantial evidence of record. The presumption that Claimant was able to work and available for suitable work was rebutted by Claimant's own testimony that he could not work. The burden then shifted to Claimant to produce evidence he was able to and available for work. Claimant failed to produce such evidence. Because Section 401(d)(1) of the UC Law provides a claimant must have been able to work and available for suitable work to be eligible for UC benefits, the Board did not err in determining Claimant was ineligible for UC benefits.

8

**CONCLUSION**

For the foregoing reasons, the Board's Orders are affirmed.

_____
STACY WALLACE, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Croucher,               : **CASES CONSOLIDATED**
          Petitioner   :
                        :
      v.              :
                        :
Unemployment Compensation  :
Board of Review,          : Nos.  1485 & 1486 C.D. 2023
          Respondent  :

# **O R D E R**

**AND NOW**, this 23rd day of May 2025, the Unemployment Compensation Board of Review's Orders dated October 26, 2023, are **AFFIRMED**.

_____

STACY WALLACE, Judge
