# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lisa Ann Reier, Individually and :
as Administratrix of the Estate of :
Anthony Jon Reier, Deceased, :
     Petitioner :
      :
  v.   : No. 354 C.D. 2024
     : ARGUED: April 8, 2025
Pennsylvania State Police, :
     Respondent :


BEFORE: HONORABLE ANNE E. COVEY, Judge
    HONORABLE MATTHEW S. WOLF, Judge
    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**     **FILED: August 28, 2025**

   Petitioner, Lisa Ann Reier, Individually and as Administratrix of the Estate of Anthony Jon Reier (Decedent), petitions for review from the Pennsylvania State Police's (PSP) denial of her request for access to criminal history investigative information pursuant to what is known as the Crime Victim Right of Access Act (Act), 18 Pa.C.S. §§ 9158-9158.7.[1] Also pending before the Court is PSP's application to supplement the record, which Petitioner opposes.[2] Upon review, we grant PSP's application to supplement the record and dismiss this matter as moot.

## I. Factual and Procedural Background

   The pertinent facts are as follows. Petitioner was married to Decedent and now serves as the Administratrix of Decedent's Estate. Pet. ¶ 5. On November

---

[1] The Act went into effect on May 2, 2023, and can be found at Subchapter F.1 of the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. §§ 9101-9183.

[2] By order issued October 4, 2024, the Court directed that PSP's application be listed with the merits of the petition for review.

19 and into November 20, 2022, Decedent and Joshua Trimmer were at the Fox Gentlemen's Club (the Club) and both were served alcohol while they were visibly intoxicated. Pet. ¶¶ 6-7. Even though Decedent was under the influence of alcohol and unfit to drive, he drove his vehicle from the Club. Pet. ¶ 8. At some point Decedent's vehicle left the road on the right side, struck a tree, and came to rest at least partially in or near the travel lane. *Id.* Petitioner maintains that Decedent was still alive after his car came to rest. *Id.* Trimmer, who was also under the influence and unfit to drive, drove his vehicle from the Club shortly after Decedent left, heading in the same direction. Pet. ¶ 9. Trimmer's vehicle struck Decedent's, pushing it into a telephone pole which then broke. *Id.* Petitioner asserts that this second impact caused further injury to Decedent and ultimately resulted in or contributed to his death. *Id.*

Trimmer was charged with one count of driving under the influence (DUI), high rate of alcohol. Pet. ¶ 11. At the time the petition for review and Petitioner's brief to this Court were filed, Trimmer was still awaiting sentencing. However, Trimmer's criminal docket sheet from the Court of Common Pleas of Northampton County indicates with respect to the above incident that he subsequently pled guilty and was sentenced to two days to six months of imprisonment in November 2024.[3]

On January 29, 2024, Petitioner sent a request to PSP pursuant to the Act, 18 Pa.C.S. §§ 9158.1 and 9158.2, seeking dissemination of criminal history investigative information relating to these events. Section 9158.1 of the Act provides that "[a] requesting party or a requesting party's legal representative may obtain criminal history investigative information under this subchapter for use in or

---

[3] *See* https://ujsportal.pacourts.us/CaseSearch, Docket No. CP-48-CR-0000076-2024 (last visited August 27, 2025).

investigation of an actual or potential civil action in this Commonwealth relating to that criminal history investigative information." 18 Pa.C.S. § 9158.1. Section 9158.2(a) of the Act pertaining to access further provides:

> (a) General rule.--
>
> > (1) A requesting party may request the dissemination of criminal history investigative information that is directly related to a civil action pending in a court in this Commonwealth.
> >
> > (2) A *crime victim or the crime victim's representative* may request the dissemination of criminal history investigative information that is material and necessary to the investigation or preparation of a civil action in this Commonwealth.

18 Pa.C.S. § 9158.2(a) (emphasis added).

Petitioner's request to PSP sought multiple categories of information pertaining to the investigation into Decedent's death, including accident reconstruction reports, videotapes from the Club, police reports, body camera footage from both the accident scene and the Club, dashcam footage, and alcohol testing results. *See* Pet. ¶ 23; Reproduced Record (R.R.) at 5a-6a. The request specified that Petitioner was seeking "dissemination of criminal history investigative information that is material and necessary to the investigation or preparation of a civil action in this Commonwealth." R.R. at 5a.

On January 30, 2024, Petitioner sent a nearly identical request to PSP, but with an additional request simply for "[p]hotographs." Pet. ¶ 24; R.R. at 9a-10a. This second request, however, stated that it was being made pursuant to the Act "as well as pursuant to the Right to Know Laws [sic]." R.R. at 9a.

3

In a letter dated March 4, 2024 (first letter), PSP's Records Information Officer and Agency Open Records Officer, William A. Rozier, stated that Petitioner's request under the Act "ha[d] been approved" and that "the requested records w[ould] be provided" upon receipt of a $150.00 fee. Pet. ¶ 25; R.R. at 12a. An invoice reflecting the $150.00 fee was included with PSP's first letter. R.R. at 13a. Petitioner immediately forwarded the $150.00 fee to PSP by check dated March 6, 2024. Pet. ¶ 26; R.R. at 15a.

Nevertheless, Mr. Rozier sent Petitioner another letter on behalf of PSP dated March 14, 2024 (second letter), which purportedly *denied the same request* and returned Petitioner's check. Pet. ¶ 27; R.R. at 17a-18a. This second letter stated that Petitioner's request pursuant to the Act was being denied because "PSP has determined there is no crime victim as defined in Section 9158 [of the Act], Definitions[.]" *Id.* Neither the first nor second letter mentioned the Right-to-Know Law (RTKL).[4]

Petitioner submitted a timely petition for review to this Court[5] requesting that we review *both* purported decisions of PSP, that is the first letter granting the request and the second letter denying the request. Pet. ¶ 13. Notably, the petition for review indicates that on March 27, 2024, Petitioner filed a civil wrongful death and survival action against Trimmer and the Club. Pet. ¶ 33.

Along with its principal brief on the merits, PSP filed an application seeking to supplement the record with the following: the affidavit of Mr. Rozier; a copy of a subpoena *duces tecum* issued to PSP in Petitioner's civil action in

---

[4] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[5] The Act provides that for a denial of a request by a criminal justice agency with statewide jurisdiction, the petition for review shall be filed in this Court within 45 days of service of the denial. 18 Pa.C.S. § 9158.4(b)-(c).

4

Northampton County, *Lisa Ann Reier v. Joshua S. Trimmer*, Docket Number C-48-CV-2024-02258, seeking the same criminal history investigative information requested herein;[6] Mr. Rozier's letter on behalf of PSP dated June 26, 2024, indicating that PSP was complying with the subpoena, with certain redactions; and an invoice from PSP to Petitioner in the amount of $12.95 for production of the information pursuant to the subpoena. *See* PSP's Appl. to Suppl., Ex. A. Mr. Rozier asserts in his affidavit that PSP provided the subpoenaed information to Petitioner's counsel on or about June 26, 2024. *Id.* Because of this, PSP argues that there is no longer an actual case or controversy and the petition for review is now moot.

Mr. Rozier also explains in his affidavit that PSP made its determination that Decedent was not a "crime victim" as defined in the Act after reviewing the report of Trooper John Marstellar of PSP's Troop M Collision Analysis and Reconstruction Specialist Unit. PSP's Appl. to Suppl., Ex. A. Trooper Marstellar was called to the scene of the accidents to assist the Upper Nazareth Township Police Department with its investigation. He apparently downloaded the event data recorder of at least one of the vehicles and conducted forensic mapping of the scene. After his investigation, Trooper Marstellar concluded that Trimmer had a blood alcohol content of 0.14% at the time of the accident, but Decedent's fatal injuries were "likely the result of the previous collision." *Id.* Curiously, however, Trooper Marstellar's report also states: "After an autopsy was conducted, it was determined that *it was not possible to determine* if this collision was responsible for the death of [Decedent]." *Id.* (emphasis added).

---

[6] The subpoena expanded upon the request for photographs as it sought "[p]hotographs related to the investigation of both accidents involving [Decedent] and/or the accident involving [] Trimmer referenced above." PSP's Appl. to Suppl., Ex. A. Otherwise, the requests in the subpoena are the same as those made here pursuant to the Act.

Petitioner filed an answer in opposition to the application to supplement, contending that PSP had not provided all of the requested criminal history investigative information and that the matter is not moot. To provide clarity on this issue and to aid in disposition, the Court issued a per curiam Order on March 19, 2025, directing PSP to file, under seal, the redacted documents given to Petitioner pursuant to the subpoena. The Order further directed PSP to provide an answer, under oath, as to whether it has any other documents in its investigative file that were not provided to Petitioner and, if so, identify the reason(s) those documents were withheld. PSP ultimately complied with our Order.[7]

## II. Issues

The issues raised by the parties are as follows:[8] (1)(a) whether it is necessary and/or appropriate to supplement the record in this case and, if so, (b) whether the petition should be dismissed as moot because PSP has now provided Petitioner with the requested information; (2) whether PSP's initial decision to grant Petitioner's request was proper and constitutes a final order such that PSP lacked the authority to subsequently deny the request via the second letter; and (3) even if PSP had the authority to issue the second letter, whether PSP erred in denying the request because it is sufficient under the Act that a criminal investigation occurred and, but

---

[7] As pointed out by Petitioner, PSP's initial response to our Order was incomplete as PSP provided the Court with 255 pages of material for *in camera* review, whereas PSP's response to the subpoena included 356 pages. *See* Pet'r's Response filed 4/1/2025. On April 7, 2025, less than 24 hours prior to oral argument, PSP admitted the error and supplied the Court with the missing materials. *See* PSP's Answer filed 4/7/2025.

[8] The issues have been reordered and paraphrased for clarity.

6

for the exercise of prosecutorial discretion, additional crimes directly impacting Decedent could have been charged.[9]

## III. Discussion

### A. Application to Supplement the Record

PSP argues that the Court must grant the application to supplement the record in order to have adequate information to conduct our appellate review, given the limited nature of the record created pursuant to the Act and what has transpired since the petition for review was filed. We agree.

While carving out an important exception to the general bar against the dissemination of criminal history investigative information, the Act itself is narrow in scope as well as cryptic in the procedures it establishes. Notably, the Act places review of PSP's decision in this Court after merely a request for criminal history investigative information and a denial, without a hearing or further administrative review, and therefore without any developed factual record.

As PSP notes, the Act itself seems to suggest the potential to supplement the perfunctory record, or even for this Court to undertake additional fact-finding, as Section 9158.4(e) requires a requesting party to prove "entitlement to access . . . by a preponderance of the evidence." 18 Pa.C.S. § 9158.4. Moreover, the section of the Act pertaining to judicial review states:

---

[9] We note that while Petitioner's brief frequently references and makes arguments pursuant to the RTKL, the instant matter is not before this Court as an RTKL appeal. Neither of PSP's letters mention the RTKL; instead, both are based solely on the Act. Moreover, an appeal from a Commonwealth agency's denial of an RTKL request must first be made to the Office of Open Records (OOR) or the agency's appeals officer, which was not done here. *See* Section 1101 of the RTKL, 65 P.S. § 67.1101. Even if the RTKL did apply, Section 708(b)(16) of the RTKL specifically exempts from disclosure an agency record "relating to or resulting in a criminal investigation, including," among other things, "[i]nvestigative materials, notes, correspondence, videos and reports." 65 P.S. § 67.708(b)(16). *See also* Section 9106(c)(4) of CHRIA, 18 Pa.C.S. § 9106(c)(4); *Castillo v. Pa. State Police*, 310 A.3d 831 (Pa. Cmwlth. 2024).

(a) Petition for review.--Subject to subsection (d), a requesting party may file a petition for review appealing a denial under section 9158.3(a)(2) (relating to denial), which shall include the following:

> (1) The request for dissemination.
>
> (2) Proof of service of the request for dissemination.
>
> (3) The denial.
>
> (4) *Other information necessary to determine whether the criminal history investigative information should be disseminated* under this subchapter.

18 Pa.C.S. § 9158.4(a) (emphasis added).  Granted, this provision relates to what a *requesting* party may file, and does not expressly allow the responding law enforcement agency to provide "other information." *Id.*

While not directly on point, this Court has repeatedly allowed supplementation of the record in the RTKL context.  The case of *Pennsylvania State Police v. Grove* is similar as it involved an RTKL request seeking investigative information surrounding a two-car vehicle accident.  119 A.3d 1102, 1104 (Pa. Cmwlth. 2015), *aff'd in part, rev'd in part*, 161 A.3d 877 (Pa. 2017).  There, the requester sought copies of PSP's investigative report as well as video and audio taken by officers, i.e., dashcam and body camera footage, at the site of the accident. The Court specifically considered whether PSP should be allowed to supplement the record with an affidavit by Mr. Rozier and other evidence.  As the *Grove* Court explained,

> [w]here the record before [the Office of Open Records] [(]OOR[)] is inadequate to determine whether requested material is exempt from disclosure, this Court has

> discretion to permit a party to enlarge the record on appeal and to consider additional evidence. *Bowling* [*v. Off. of Open Recs.*], 75 A.3d [453,] 476 [(Pa. 2013)]; *Carey v. P*[*a.*] *Dep*[*'t*] *of Corr*[.], 61 A.3d 367, 371 n.3, 377 (Pa. Cmwlth. 2013); *Dep*[*'t*] *of Env*[*'t*] *Prot*[.] *v. Cole*, 52 A.3d 541, 546 n.6, 549-50 & n.14, 552 (Pa. Cmwlth. 2012). Consideration of additional evidence is particularly appropriate where the requested items involve law enforcement or public security issues and the OOR record contains no information on their nature and context. *Carey*, 61 A.3d at 377.

*Grove*, 119 A.3d at 1105-06. The *Grove* Court granted PSP's application to supplement the record, noting that Mr. Rozier's "[a]ffidavit provides facts necessary to a proper evaluation of whether the recordings at issue are investigative records and the absence of this evidence from the OOR record does not appear to be a result of agency disregard of its obligation to submit evidence to OOR[.]" *Id.* at 1106.

Here, Mr. Rozier's affidavit and the exhibits accompanying PSP's application explains, somewhat unpersuasively, how the agency came to its representation that there was no "crime victim" pursuant to the Act, thus purportedly prohibiting PSP from disclosing the requested information to Petitioner. Although in this case we will not decide the merits of the legal issues presented, it would seem self-evident that if any facts remain in dispute, some procedure will have to be developed for their adjudication. However, the supplemental record also explains how events subsequent to the filing of the petition for review have rendered this matter moot, and these averments are not disputed. We therefore agree with PSP that without the supplemental record, this Court would lack the information necessary to decide this case. Therefore, we grant PSP's application to supplement the record.

B. The Mootness Doctrine and Exceptions

PSP claims that the petition for review should be dismissed as moot because it has now provided Petitioner with all of the requested information and, therefore, an actual case or controversy no longer exists. Again, we are constrained to agree.

"In general, a court will not decide a moot question" and there must be an actual case or controversy at every stage of the judicial process. *J.J. M. v. Pa. State Police*, 183 A.3d 1109, 1112 (Pa. Cmwlth. 2018). To that end,

> [t]he existence of a case or controversy requires:
>
> (1) A legal controversy that is real and not hypothetical;
>
> (2) A legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for a reasoned adjudication; and
>
> (3) A legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution.

*Cal. Borough v. Rothey*, 185 A.3d 456, 463 (Pa. Cmwlth. 2018) [quoting *Mistich v. Pa. Bd. of Prob. & Parole*, 863 A.2d 116, 119 (Pa. Cmwlth. 2004)]. As this Court has explained, "[a] case is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Id.* [quoting *Chruby v. Dep't of Corr.*, 4 A.3d 764, 770 (Pa. Cmwlth. 2010)]; *see also Harris v. Rendell*, 982 A.2d 1030, 1035 (Pa. Cmwlth. 2009) (courts will not decide moot questions as we "do not render decisions in the abstract or offer purely advisory opinions"). Notably, "[m]ootness problems arise in cases involving litigants who clearly had one or more justiciable matters at the outset of the litigation, but events or changes in the facts or the law occur which allegedly deprive the litigant of the

10

necessary stake in the outcome after the suit is underway." *Phila. Pub. Sch. Notebook v. Sch. Dist. of Phila.*, 49 A.3d 445, 449 (Pa. Cmwlth. 2012) (citing *Chruby*, 4 A.3d at 771).

Here, because PSP has now provided Petitioner with the requested criminal history investigative information pursuant to the civil subpoena, there is no longer an actual case or controversy for this Court to adjudicate. *See Phila. Pub. Sch. Notebook*, 49 A.3d at 449 (holding that case was technically moot once school district provided the requester with responsive documents); *see also Martinez v. City of Reading Police Dep't*, 289 A.3d 1136 (Pa. Cmwlth. 2023) (holding request for police body camera footage was moot following requester's acquittal of related summary harassment charges). As attested in Mr. Rozier's sworn affidavit, and confirmed by PSP's Counsel during oral argument, PSP has now provided Petitioner with all responsive documents in its possession, including the previously withheld autopsy photographs. *See* PSP's Answer filed 3/27/2025, Exs. C & D. Because Petitioner already has the information she was seeking, there is nothing further this Court can order as effective relief pursuant to the Act and Petitioner no longer has a personal stake in the outcome of the request. *See* Section 9158.4(e) of the Act, 18 Pa.C.S. § 9158.4(e) (providing that "a court may award declaratory and injunctive relief only"); *see also Martinez*, 289 A.3d at 1141. Therefore, this case is technically moot.

This does not end our inquiry, however. Even where an appeal is technically moot, exceptions "may be made where the conduct complained of is capable of repetition yet likely to evade judicial review, where the case involves issues of great public importance, or where one party will suffer a detriment without

11

the court's decision." *Gray v. Phila. Dist. Att'y's Off.*, 311 A.3d 1230, 1236 (Pa. Cmwlth. 2024).

An issue is capable of repetition but likely to evade review where "the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration" and "there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Gray*, 311 A.3d at 1238. Here, we are not dealing with an impending deadline or a short window of opportunity, so there is no indication that a future denial under the Act could not be fully litigated. Also, Petitioner will not be subjected to the same agency action again since there is but one criminal investigative file at issue and that has now been produced. As for the other exceptions, neither party will suffer a detriment without a decision from this Court and, given the narrow issue raised here, we decline to find that this particular matter falls in the limited category of cases that satisfy the great public importance exception. *See Harris*, 982 A. 2d at 1037 [quoting *Bottomer v. Progressive Cas. Ins. Co.*, 859 A.2d 1282, 1285 (Pa. 2004)] ("the great public importance exception . . . 'is generally confined to a narrow category of cases'").[10]

---

[10] The Court expresses its frustration with PSP's handling of this matter, including the issuance of two contradictory decisions regarding Petitioner's request, the delay in filing an application to supplement the record until after Petitioner's initial merits brief was submitted, its initial failure to provide accurate information for the Court's review, and the lack of reasoning that a crime victim did not exist beyond the fact that the agency said so. It would appear to be PSP's position that, even where someone appears to be a homicide victim, his representative must prove the element of cause of death in order to obtain the records that would provide the facts underpinning such proof. Given that it was the clear intent of the General Assembly that this Act would enable such victims to obtain the evidence they would need in order to prosecute a civil suit, such a position would seem absurd.

12

## IV. Conclusion

Accordingly, we grant PSP's application to supplement the record and dismiss this matter as moot.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lisa Ann Reier, Individually and    :
as Administratrix of the Estate of    :
Anthony Jon Reier, Deceased,    :
                    Petitioner    :
    :
        v.    :  No. 354 C.D. 2024
    :
Pennsylvania State Police,    :
               Respondent    :

## O R D E R

AND NOW, this 28th day of August, 2025, Respondent's Application to Supplement the Record is GRANTED, and this case is DISMISSED as moot.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita